OPINION OF THE COURT
ClPARICK, J.
This is an appeal by employees of Barnard College from an order of the Appellate Division which affirmed a determination of the Unemployment Insurance Appeal Board that denied them benefits. The employees had gone on strike against Barnard six weeks before the end of the spring semester in 1996. *19 They claim that the Appeal Board, in denying them unemployment insurance benefits, improperly relied on Labor Law § 590 (11), which prohibits payment of benefits during an academic recess or holiday if the employee has a “reasonable assurance” of employment for the following academic term. Petitioners contend that Labor Law § 590 (11) has no application here as they were not on academic recess, but on strike. In their view, only Labor Law § 592 applies, which suspends unemployment insurance benefits for a period of seven weeks in the event of a strike. We disagree with petitioners and conclude that under the circumstances presented Labor Law § 590 (11) and § 592 can be harmonized, and that section 592 does not preclude the application of section 590 (11).
Nevertheless, we conclude that it was error for the Appeal Board and the Appellate Division to rely on the parties’ expired collective bargaining agreement through the operation of the “Triborough Doctrine.” They used this public employee doctrine to support the conclusion that each claimant had a “reasonable assurance” of fall semester employment. Since this constitutes an error of law in arriving at the decision, we remit for consideration of the “reasonable assurance” question, free of reliance on the expired collective bargaining agreement.
Petitioners were employed by Barnard College during the 1995/1996 academic year in various nonprofessional capacities, including desk attendant positions. All petitioners were members of Technical Office and Professional Union Local 2110, UAW, AFL-CIO (Union). The parties operated under a collective bargaining agreement (CBA), which prohibited Barnard from terminating petitioners without good cause. The CBA expired on December 31, 1995. According to the CBA, petitioners were designated as hourly wage, permanent employees of Barnard. Some had been employed by the college for over 10 years. Barnard worked on a traditional two-semester system, fall and spring, and although the school had a summer session, petitioners were not required to work during the summer. In past years, Barnard inquired as to who among the desk attendants would be interested in working during the summer and also typically sent letters to those in desk attendant positions informing them of when they were expected to report to work in the fall. Barnard did not send such letters to the non-desk attendants.
During 1996, the Union and Barnard attempted to negotiate a new collective bargaining agreement. Failing to reach agreement, however, petitioners struck on February 22, but returned *20 to work on March 5. On March 15, Barnard sent a letter to all desk attendants, inquiring as to who would be interested in working during the summer session and that such assignments would be made based on seniority.
With no new agreement, petitioners again struck on April 10, six weeks before the end of the spring semester. The strike lasted until September 13, approximately one month into the fall semester. During the strike, Barnard did not send letters to the desk attendants regarding work during the fall semester. Barnard was under the impression that communicating directly with the striking employees would have violated the National Labor Relations Act.
In late May and early June 1996, petitioners filed for unemployment insurance benefits. Labor Law § 592 provides that for unemployment due to an industrial controversy, including a strike, “benefit rights * * * shall be suspended during a period of seven consecutive weeks beginning with the day after” the employee lost employment due to the strike (Labor Law § 592 [1]). The local unemployment insurance office determined that benefits were appropriate. Barnard, however, objected and requested a hearing on the ground that Labor Law § 590 (11) precluded benefits. Section 590 (11) prohibits payment of benefits to nonprofessional employees of educational institutions for “any week commencing during the period between two successive academic years or terms provided there is a reasonable assurance that the claimant will perform services in such capacity for any such institution or institutions for both of such academic years or terms” (emphasis added). As relevant to petitioners, the benefit calculation rules that apply where there is “reasonable assurance” of employment for the following semester require that the wages during the past academic year — on which unemployment insurance benefits are based — must be disregarded. In other words, no unemployment insurance benefits can be distributed to a claimant, still employed, but on summer break.
After a hearing, the Administrative Law Judge (ALJ) overruled Barnard’s objections and held that for all petitioners “there must be an affirmative expression of intent to rehire made to the claimants in order to establish the [reasonable] assurance.” In the ALJ’s view, although an actual letter was not required, the evidence and testimony failed to establish that such an affirmative expression had been communicated to the petitioners to support a finding of “reasonable assurances.”
*21 The Unemployment Insurance Appeal Board disagreed and reversed the ALJ’s determination. Based on the record before the ALJ, it concluded that each claimant had a “reasonable assurance” of employment for the fall semester because (1) claimants were considered permanent and not temporary employees; (2) as a matter of past practice, claimants historically had “a right to return to work at the start of the Fall semester”; (3) the terms of the expired CBA continued in effect by virtue of the “Triborough Doctrine” (see, Matter of La Mountain [Westport Cent. School Dist. — Ross], 51 NY2d 318), thus supporting their right to return to work for the fall semester; and (4) during the strike, although Barnard had the right under Federal law to hire replacement workers, it took no steps to do so.
On petitioners’ appeal, the Appellate Division affirmed. It noted that the issue “distil [led] to whether claimants received ‘reasonable assurance’ of employment” (259 AD2d 907, 908), and concluded that past practices as well as the expired CBA which remained in effect until a new one was negotiated, gave claimants the requisite “reasonable assurance” of fall semester employment. We granted petitioners leave to appeal and reverse because of the error of law in applying the “Triborough Doctrine” to this private sector labor-management dispute.
Petitioners primarily contend that Labor Law § 590 (11) and § 592 cannot be reconciled, and that only section 592 applies here. We disagree. It is true that the two statutory provisions address different situations, with section 590 (11) guarding against the distribution of unemployment insurance benefits merely because employment was interrupted by an academic recess and with section 592 maintaining the “principle of governmental neutrality” in the face of an industrial controversy by suspending benefits for seven weeks if the claimant-worker is unemployed due to a strike (Matter of Heitzenrater [Hooker Chem. Co. — Catherwood], 19 NY2d 1, 7 [citations omitted]). This case, however, gives us both situations, and nothing in the statutes themselves, the unemployment insurance legislative scheme, or the legislative history of these statutes suggests that one is to have primacy over the other. Expressed another way, “[i]t is not the function of the court * * * to declare one statute the victor over another if the statutes may be read together, without misdirecting the one, or breaking the spirit of the other” (Matter of Foley v Bratton, 92 NY2d 781, 787; see, Morris Plan Indus. Bank v Gunning, 295 NY 324, 330-331; Matthews v Matthews, 240 NY 28, 36).
The tension between these two statutes may benefit from legislative refinement, but nothing prevents section 590 (11) *22 and. section 592 from operating together. There is no undermining of section 592’s statutory purpose in allowing section 590 (ll)’s disqualification of benefits to operate during a break between semesters. Indeed, if section 592 alone were to apply, it would neutralize section 590 (11) during industrial controversies that straddle a summer recess such as was present here. Without good reason however, we cannot interpret one statute to nullify another when both are part of the same statutory scheme. Here, although the strike lasted through the entire summer, it began less than seven weeks — the section 592 (1) threshold — before the summer recess. Once the summer recess began, the requirements of section 590 (11) took effect, along with the “reasonable assurance” of employment provision for the following academic semester.
Thus, the question in this case boils down to whether there were “reasonable assurances” under Labor Law § 590 (11) that petitioners could return to their employment after the summer recess. In deciding this issue, however, both the Appeal Board and the Appellate Division erred by relying on the “Triborough Doctrine” to support their determinations. As limited by Matter of Board of Coop. Educ. Servs. v New York State Pub. Empl. Relations Bd. (41 NY2d 753), the “Triborough Doctrine” seeks to preserve the status quo in situations where a collective bargaining agreement between a public employer and its employees has expired and a new one has yet to be agreed upon. In certain instances, the terms and conditions of the expired CBA continue in effect until a new agreement is negotiated (Matter of La Mountain [Westport Cent. School Dist. — Ross], 51 NY2d 318, 330, supra', but see, Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 336).
Notably, the “Triborough Doctrine” has never been applied in the private employment context because the doctrine is grounded in the limitations imposed on public employee organizations by the Civil Service Law (Matter of Triborough Bridge & Tunnel Auth. [District Council 37], 5 PERB 3064; see, Civil Service Law §§ 209, 210). Moreover, both parties now agree that in this case, the doctrine cannot supercede an employer’s rights under Federal law to replace temporarily or permanently a striking worker (see, National Labor Relations Bd. v Mackay Radio & Tel. Co., 304 US 333, 345-346). Thus, any reliance by the Appeal Board on the “Triborough Doctrine” to find that employees rights under the expired contract constituted reasonable assurance was misplaced. Our review is limited to the legal question of whether the Appeal Board’s de *23 cisión regarding “reasonable assurances” was supported by substantial evidence (Matter of Di Maria v Ross, 52 NY2d 771, 772; Matter of Fisher [Levine], 36 NY2d 146, 150; Matter of Sierant [Catherwood — General Mills], 24 NY2d 675, 679). Because an error of law was made in the application of the “Triborough Doctrine,” we remit for a plenary consideration of the “reasonable assurance” question, free of reliance on the expired collective bargaining agreement.
Further, we likewise reject petitioners’ remaining contention that under Labor Law § 590 (11) (d) the denial of unemployment insurance benefits was improper because the strike lasted several weeks into the fall semester. Section 590 (11) (d) provides that “a claimant who was not offered an opportunity to perform services for the educational institution for the second of such academic years or terms shall be entitled to be paid benefits retroactively” (Labor Law § 590 [11] [d]). Here, it is undisputed that once the strike settled, petitioners returned to work for the fall semester, and under these circumstances, petitioners cannot claim the benefit of this statutory provision.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to that Court with directions to remand to the Unemployment Insurance Appeal Board for further proceedings in accordance with this opinion.
Judges Bellacosa, Smith, Levine, Wesley and Rosenblatt concur; Chief Judge Kaye taking no part.
Order reversed, etc.