■ In the Matter of the Claims of SIGRIED GOODMAN et al., Respondents. BARNARD COLLEGE, Appellant; COMMISSIONER OF LABOR, Respondent. [736 NYS2d 733] —Spain, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed September 19, 2000, which, upon remittal from the Court of Appeals, rescinded a prior decision and ruled that claimants were eligible to receive unemployment insurance benefits.

The question posed by this appeal by the employer, Barnard College, is whether there is substantial evidence to support the determination of the Unemployment Insurance Appeal Board, upon remittal from the Court of Appeals, that claimants were eligible for unemployment insurance benefits because the employer had not provided reasonable assurance of employment for the fall 1996 academic year (*see,* Labor Law § 590 [11]). Finding substantial evidence in the record to support the Board's resolution of the factual issue regarding reasonable assurance (*see, Matter of Makis [Tompkins-Seneca-Tioga Bd. of Coop. Educ. Servs.—Commissioner of Labor]*, 251 AD2d 928, 929; *see also, Matter of Cannizzaro [Buffalo Bd. of Educ.— Commissioner of Labor]*, 256 AD2d 846, *lv denied* 93 NY2d 815), its decision should be affirmed.

During the 1995-1996 academic year, claimants were permanent, unionized employees of Barnard serving during the two-semester academic year in nonprofessional capacities including desk attendant positions. They were not required to work during the summer session, although the desk attendants were

asked each year if they were interested in working the summer. Their collective bargaining agreement (hereinafter CBA) expired in December 1995 and when an agreement was not reached, claimants went on strike between February 22, 1996 and March 5, 1996 and again from April 10, 1996 until September 13, 1996, when a new agreement was reached, approximately one month into the fall 1996 semester. Although Barnard had typically sent letters to the desk attendants during the summer (although not to the nondesk attendants) informing them of when they were expected to return to work in the fall, during the 1996 summer break Barnard did not send any such letters to any of the striking claimants or otherwise inform them or the union that it intended to rehire them after the strike ended or a new CBA was reached.

After seven weeks or more of unemployment due to the strike (*see*, Labor Law § 592 [1] [suspending benefits for seven weeks if unemployment is due to a strike]), claimants filed for unemployment insurance benefits in late May and early June 1996. After a hearing, the Administrative Law Judge overruled Barnard's objections, finding that the evidence and testimony had failed to establish that Barnard provided "reasonable assurance" to the striking claimants during the summer break, i.e., "the period between two successive academic years" (Labor Law § 590 [11]), that they would be rehired for the fall semester. On appeal, the Board disagreed and reversed, finding that each claimant was ineligible for benefits because he or she had a "reasonable assurance" of employment for the fall semester provided by, inter alia, the terms of the expired CBA which continued until the new CBA was negotiated, pursuant to the *Triborough* Doctrine (*see*, *Matter of Triborough Bridge & Tunnel Auth. [District Council 37]*, 5 PERB ¶ 3064). Specifically, the Board held that under the terms of the expired CBA and past practice thereunder, claimants were permanent employees entitled to return to work in the fall and only terminable under certain conditions which provided the requisite reasonable assurance. Thus, Barnard's failure to send assurance letters to desk attendants (or the others) in the summer of 1996 regarding when they were expected to return to work for the fall semester, as Barnard had done in the past, was not necessary and did not negate the assurance provided by past practice and the expired CBA. Also, Barnard had not elected to hire replacement workers, as it was entitled to do (*see*, *National Labor Relations Bd. v Mackay Radio & Tel. Co.*, 304 US 333, 345-346).

This Court affirmed (259 AD2d 907), but the Court of Ap-

peals reversed (95 NY2d 15), ruling that the *Triborough* Doctrine did not apply in this *private sector* employment context and "[t]hus, any reliance by the * * * Board on the *'Triborough* Doctrine' to find that employees['] rights under the expired [CBA] constituted reasonable assurance was misplaced" (*id.*, at 22). The Court of Appeals remitted "for a plenary consideration of the 'reasonable assurance' question, free of reliance on the expired [CBA]" (*id.*, at 23).

Upon remittal, the Board examined the surrounding circumstances without relying on the expired CBA and rescinded its prior decision, determining that Barnard had failed to provide any assurance to claimants after the strike began in April 1996 that they would be rehired for the fall 1996 semester or after the strike ended. The Board explained that while normally employees who are permanent under the terms of a CBA are entitled to return to work in the fall semester and would not require an overt manifestation of reasonable assurance from their employer, this situation is distinguishable. Where, as here, the employees are on strike between academic years and the private sector CBA expired precluding reliance on its protective terms, the Board reasoned that "some overt manifestation of reasonable assurance by the employer, either orally or in writing" is needed to conclude that claimants were assured of their right to return to work for the fall semester. In finding that claimants had received no such assurance, the Board noted that Barnard had not sent any letters of reasonable assurance, had never advised claimants or their union that it would not be exercising its right to permanently replace them, and had discontinued paying their health insurance on August 1, 1996.

As relevant to this appeal, Labor Law § 590 (11) provides that nonprofessional employees of an academic institution are ineligible for unemployment insurance benefits during the period between academic years/terms provided that they have a "reasonable assurance" of continued employment in the upcoming academic year/term (*see*, 95 NY2d 15, 20, *supra*; *see also*, *Matter of Sifakis [Roberts]*, 133 AD2d 511, 512). As noted, reasonable assurance of employment is a factual issue for the Board to resolve and its determination will be upheld if supported by substantial evidence (*see*, *Matter of Cannizzaro [Buffalo Bd. of Educ.—Commissioner of Labor]*, 256 AD2d 846, *supra*; *Matter of Makis [Tompkins-Seneca-Tioga Bd. of Coop. Educ. Servs.—Commissioner of Labor]*, 251 AD2d 928, 929, *supra*). We find that under the circumstances here—where claimants were striking and unprotected by the terms of the

expired CBA—the absence of any kind of overt manifestation from Barnard that their employment would be continued in the fall semester (or after the strike ended) or that they would not be permanently replaced provides substantial evidence for the Board's determination that they had no reasonable assurance of continued employment.

Significantly, no letter or communication of any kind was sent to the striking claimants or their union providing such assurance, although the desk attendants had previously received such letters when the CBA was in effect (*see, Matter of Friedman [Nassau Community Coll.—Commissioner of Labor]*, 261 AD2d 763; *Matter of Bicjan [New York City Bd. of Educ.—Sweeney]*, 219 AD2d 751; *Matter of Laudadio [City Univ. of N.Y.—Roberts]*, 108 AD2d 1091; *cf., Matter of Aloia [Commissioner of Labor]*, 278 AD2d 650; *Matter of Huff [Commissioner of Labor]*, 257 AD2d 832; *Matter of Cannizzaro [Buffalo Bd. of Educ.—Commissioner of Labor]*, supra; *Matter of Hammond [Commissioner of Labor]*, 252 AD2d 638; *Matter of Makis [Tompkins-Seneca-Tioga Bd. of Coop. Educ. Servs.—Commissioner of Labor]*, supra; *Matter of Whiting [City Univ. of N.Y.—Sweeney]*, 243 AD2d 904; *Matter of Sandick [New York City Bd. of Educ.—Hudacs]*, 197 AD2d 737; *Matter of Sifakis [Roberts]*, supra; *Matter of Peak [North Colonie Cent. School Dist.—Ross]*, 72 AD2d 854). Also, Barnard discontinued paying for their health insurance just weeks before the start of the fall semester (*see, Matter of Smith [Moriah Cent. School Dist.—Roberts]*, 89 AD2d 684).

We cannot agree with Barnard's claim that the Board erred in requiring "some overt manifestation of reasonable assurance" in these circumstances. Where, as here, the strike was ongoing, the CBA had expired, Barnard did not follow its past practice of sending letters to desk attendants, and its past practice of employing them each fall occurred under different circumstances, the Board's interpretation of Labor Law § 590 (11) as requiring some overt manifestation of reasonable assurance to claimants was neither illogical nor unreasonable and will not be disturbed (*see, Matter of La Mountain [Westport Cent. School Dist.—Ross]*, 51 NY2d 318, 330; *Matter of Fisher [Levine]*, 36 NY2d 146, 150; *Matter of Peak [North Colonie Cent. School Dist.—Ross]*, supra).

Barnard's contention that federal law, unlike the *Triborough* Doctrine, permits reliance on the terms of the expired CBA to find reasonable assurance does not compel a contrary result. Barnard never disavowed its right under federal law to permanently replace the striking claimants (*see, National*

*Labor Relations Bd. v Mackay Radio & Tel. Co.*, 304 US 333, 345-346, *supra*). Also, even if federal law essentially continues the terms of an expired CBA under some circumstances (*see, Litton Fin. Print. Div. v National Labor Relations Bd.*, 501 US 190, 198), the presence of reasonable assurance is a *factual* issue (*see, Matter of Makis [Tompkins-Seneca-Tioga Bd. of Coop. Educ. Servs.—Commissioner of Labor]*, 251 AD2d 928, 929, *supra*) and, in making that assessment, among other factors, the Board was entitled to rely on Barnard's actions—contrary to the terms of the expired CBA or any intent to provide assurance—in discontinuing health insurance benefits.

Cardona, P.J., Mercure, Crew III and Peters, JJ., concur. Ordered that the decision is affirmed, without costs.