Matter of D'Altorio (Clare Rose, Inc.--Commissioner of Labor) (2019 NY Slip Op 04249)





Matter of D'Altorio (Clare Rose, Inc.--Commissioner of Labor)


2019 NY Slip Op 04249


Decided on May 30, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 30, 2019

527330

[*1]In the Matter of the Claim of JAMES D'ALTORIO, Respondent. CLARE ROSE, INC., Appellant. COMMISSIONER OF LABOR, Respondent. (And 103 Other Related Claims.)

Calendar Date: April 29, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ.


Littler Mendelson, PC, Melville (Denise Barton Ward of counsel), for appellant.
Rivkin Radler LLP, Uniondale (Barry I. Levy of counsel), for James D'Altorio, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeals from 104 decisions of the Unemployment Insurance Appeal Board, filed January 18, 2018, which ruled that the suspension-of-benefits period set forth in Labor Law § 592 (1) did not apply and that claimants were therefore eligible to receive unemployment insurance benefits during the subject period.
The employer, a beer wholesaler operating warehouses in two locations on Long Island, employed union workers consisting of warehouse workers, delivery drivers and driver salespersons to provide its services. On April 23, 2017, approximately 117 of the union workers went on strike (hereinafter the striking employees),[FN1] and claimants, 104 of those striking employees, filed claims for unemployment insurance benefits. Following an inquiry, the Department of Labor issued initial determinations finding that claimants were eligible to receive unemployment insurance benefits and not subject to the seven-week suspension of benefits period set forth in Labor Law § 592 (1). The employer objected and requested a combined hearing, at the beginning of which the parties stipulated that the claims filed by claimants James D'Altorio, John Ajello, Sean Miller and Carson Sisawang would be presented at the hearing as [*2]test cases and that the determinations in these four cases would be determinative for all claimants. Following the combined hearing, an Administrative Law Judge found that claimants were not subject to the statutory seven-week suspension period and were eligible for benefits because the employer hired permanent replacement workers to fill claimants' positions and failed to certify in writing that claimants would be able to return to work after the strike ended. On administrative appeal, the Unemployment Insurance Appeal Board adopted the findings of fact and determination of the Administrative Law Judge and issued 104 identical decisions sustaining the Department's initial determinations. The employer appeals from all 104 decisions of the Board.
We affirm. "Pursuant to Labor Law § 592 (1), unemployment insurance benefits are suspended during the first consecutive seven weeks of a strike or industrial controversy beginning the day after a claimant ceases working due to a strike, unless there has been a peremptory lockout by the employer" (Matter of Parron [Verizon N.Y., Inc.-Commissioner of Labor], 159 AD3d 1215, 1215 [2018] [citations omitted]; see Matter of Goodman [Barnard Coll.-Commissioner of Labor], 95 NY2d 15, 20 [2000]). Unemployment insurance benefits are not suspended, however, if the "employer hires a permanent replacement worker for the employee's position" (Labor Law § 592 [1] [b] [i]). In this regard, "[a] replacement worker shall be presumed to be permanent unless the employer certifies in writing that the employee will be able to return to his or her prior position upon conclusion of the strike" (Labor Law § 592 [1] [b] [i]).
The employer contends that claimants should not receive benefits for the at-issue seven-week period because, although it hired permanent replacement workers, it adequately certified in writing that claimants would be able to, and did, return to their prior positions of employment. We disagree. The record reflects that, shortly after the strike began, the employer notified the union in writing that it intended to "permanently replace" the striking employees and that the striking employees would "not automatically have the right" to return to work when the strike ended and to "displace [the] permanent replacement workers." In a subsequent May 2017 response to a Department questionnaire, the employer acknowledged that temporary replacement workers had been hired, that it also intended to hire permanent replacement workers and that the striking employees would be allowed to return to work after the strike ended "unless permanently replaced." The employer further acknowledged to the Department that the "identity of [the striking] workers who may be permanently replaced is unknown and indeterminate at present." At the hearing, it was established that, in addition to hiring temporary replacement workers, the employer ultimately hired approximately 71 permanent replacement workers for positions held by striking employees — namely warehouse workers and delivery drivers [FN2]. Although it is unclear which of claimants' positions were filled by the permanent replacement workers, the record unequivocally demonstrates that none of the claimants were notified in a certified writing that they would be able to return to their prior positions upon the conclusion of the strike. Moreover, although claimants ultimately were allowed to return to their prior positions following ratification of the parties' July 13, 2017 Memorandum of Agreement ending the strike, that agreement is of no consequence because the employer failed to provide any written certification during either the seven-week suspension period or at any time prior to the conclusion of the strike assuring claimants that they would retain the right to return to their prior positions upon conclusion of the strike (see Labor Law § 592 [1] [b] [i]). Accordingly, having reviewed the record before us, we conclude that substantial evidence supports the Board's determination that claimants were eligible to receive unemployment insurance benefits and not subject to the seven-week suspension of benefits period set forth in Labor Law § 592 (1) (compare Matter of Juncaj [Commissioner of Labor], 23 AD3d 777, 778 [2005]). We have considered the employer's remaining contentions and find them to be without merit.
Egan Jr., J.P., Lynch, Clark and Mulvey, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: The record reflects that an additional 15 nonunion workers in three other types of positions also went on strike.

Footnote 2: The employer did not hire replacement workers for the driver salesperson positions because it reclassified those positions as delivery driver positions.