OPINION OF THE COURT
Jones, J.
A determination by the Unemployment Insurance Appeal Board that a nonprofessional employee of a school district is ineligible for unemployment benefits in weeks between academic years will not be disturbed when the employee, who is a member of a collective bargaining unit, has received a written notice that his or her employment will be continued during the following year, although no provision assuring such employment following the summer recess is included in the collective bargaining agreement previously entered into by the school district.
Each of the claimants in these three cases was employed in a nonprofessional capacity by a public school district during the 1977-1978 academic year — La Mountain, White and Brant as cafeteria workers and Bunning as a nurse by the Westport Central School District, Williams as a bus driver by the Ithaca City School District, and Hess as a cafeteria worker by the *326 Baldwinsville Central School District. Collective bargaining agreements that had been in effect with respect to the West-port and Ithaca school districts expired on June 30, 1978 and, although contract negotiations were then under way, no successor agreements had been signed when the named employees of those districts sought unemployment benefits. A collective bargaining agreement to which the Baldwinsville district was a party covered the period from July 1, 1977 through June 30, 1979, but neither that agreement nor the expired agreements with the other two districts contained any provision assuring claimants that they would be employed for the school year commencing in September, 1978. However, on June 20, 1978 or June 23, 1978 each claimant was sent a letter or notice by her school district informing her that she would be continued in her position during the school year or term that would begin the following September and requesting that she indicate her intention to resume her duties by signing and returning a copy of the letter or notice from the school district. Each of the claimants, with the exception of Hess, communicated her written acceptance of the continuation.
Shortly after the 1977-1978 school year had ended, and after the above notices had been received, each of the several employees filed a claim for unemployment benefits for the summer recess period between the 1977-1978 and the 1978-1979 school years; the claims were rejected and benefits denied by respondent appeal board however, on the ground that each claimant came within the proviso clause of subdivision 11 of section 590 of the Labor Law. That subdivision, in pertinent part, provides: "Benefits based on non-professional employment with certain educational institutions. If a claimant was employed in other than an instructional, research or principal administrative capacity by an educational institution which is not an institution of higher education, the following shall apply to any week commencing during the period between two successive academic years or terms provided the claimant as a member of a collective bargaining unit has a written contract which continues his services in such capacity for any such institution or institutions for both of such academic years or terms or an individual contract to perform services for such period if he is not a member of a bargaining unit” (emphasis added).
With respect to the claims filed by employees of the West- *327 port and Ithaca school districts, the appeal board found that the collective bargaining agreements with those districts which expired on June 30, 1978 (the provisions of which it considered as continuing in effect during negotiation of successor agreements), taken with the notices of employment for the school year or term beginning in September, 1978 distributed to the claimants in June, 1978, constituted written contracts within subdivision 11 of section 590 of the Labor Law. With respect to claimant Hess of the Baldwinsville school district, the board found that she was covered by the collective bargaining agreement between the district and the union representing its employees effective from July 1, 1977 through June 30, 1979 and had been notified that her services were to be continued for the school year 1978-1979, so that she was similarly rendered ineligible for benefits by the statute.
The Appellate Division, at which the appeals in these cases were argued together, affirmed the decisions by the Unemployment Insurance Appeal Board, concluding that claimants were ineligible for benefits for the period between the 1977-1978 and 1978-1979 school years by reason of subdivision 11 of section 590 of the Labor Law. We reach the same result but for a reason different from that of the court below.
With respect to ineligibility of nonprofessional employees of educational institutions for benefits under the Unemployment Insurance Law (Labor Law, art 18) during periods between successive academic years or terms of their employer institutions, the Appellate Division distinguished (correctly in our view) two groups of employees — those who are members of a collective bargaining unit and those who are not. A member of a collective bargaining unit is ineligible for benefits if he or she has a written contract which "continues his services * * * for both of such academic years or terms”. An employee who is not a member of a bargaining unit is ineligible if he or she has "an individual contract to perform services for such period”. The court below concluded that, because either no collective bargaining agreement assuring employment of the claimants during the school year beginning in September, 1978 was in effect or because (in the case of claimant Hess) the agreement which was in effect failed to assure Hess’ employment during that school year, claimants did not fall within the first group excluded from benefits by subdivision 11 of section 590, and that ineligibility, if it existed, must be based on the existence of "personal contracts” of employment *328 —the critical factor in the case of employees who were not members of a bargaining unit. (The court took this position notwithstanding that it was satisfied that claimants had not ceased to be members of a bargaining unit on the expiration of the collective bargaining agreements of their units.) It then found that the notices of employment for the 1978-1979 year or term sent to each of the claimants constituted such "personal contracts”, and the determination of ineligibility followed.
We agree that claimants are not entitled to unemployment benefits for the 1978 school summer recess period but predicate this conclusion on the appeal board’s finding that claimants had written contracts within the meaning of subdivision 11 of section 590, which were sufficient to disqualify them, as members of a bargaining unit, from benefits between the school years in question. At the core of the controversy between the parties is the question whether, to disqualify a claimant who is a member of a collective bargaining unit, his or her written contract for continued employment must be contained and expressed in an applicable collective bargaining agreement. Claimants strenuously urge that the statute requires such incorporation and that no written contract outside a collective bargaining agreement will suffice; the Industrial Commissioner does not read the statute to lay down any such exclusive mandate. If that issue be resolved in favor of the commissioner and it is determined that a written contract outside the collective bargaining agreement may satisfy the statute, there remains the subsidiary question whether these claimants are disqualified in consequence of any such written contracts.
The contention that the written contract with the individual employee must be embodied in a collective bargaining agreement overlooks the fact that nowhere in subdivision 11 of section 590 is there any reference to a collective bargaining agreement; what the statute requires for ineligibility in the case of a member of a collective bargaining unit is a "written contract” and, in the case of a nonmember, an "individual contract”. The objective of the statute is apparent on its face —to render ineligible for school summer recess unemployment benefits nonprofessional school employees of one year who have been assured that their employment will continue when the next academic year resumes in the fall. In the case of an-employee who is a member of a collective bargaining unit the *329 necessary evidence of the required assurance is a "written contract” — something on which the individual employee can rely. Nothing in the language of the statute or in the circumstances existing at the time of its enactment suggests the restriction for which claimants argue — namely, that the employee is to be deprived of benefits only if the written assurance of continuing employment is incorporated in a collective bargaining agreement. Indeed, quite the contrary may be concluded from counsel’s concession on oral argument that it was not the prevailing practice of educational institutions in labor relations at the time subdivision 11 of section 590 was adopted to include individual contracts of hire in collective bargaining agreements.[1] As the Supreme Court of the United States has observed: "Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone.” (J. I. Case Co. v Labor Bd., 321 US 332, 334-335.) That being so, to regard the statute as applicable only to those instances in which the hiring contracts of the employees were included in a collective bargaining agreement would serve in practical consequence to emasculate the legislation and to ascribe to the Legislature an intent to adopt an ineffectual statute.[2]
Claimants place unwarranted emphasis in their argument on the inclusion of the phrase "as a member of a collective *330 bargaining unit” in subdivision 11 when they assert that the only way in which a claimant as a member of a collective bargaining unit may have a written contract which continues his services is that the contract continuing his services be included in a collective bargaining agreement. The phrase serves only to define the group to which the requirement of a written contract applies; it contrasts with the description of an employee falling within the second group (viz., an employee who "is not a member of a bargaining unit”), nothing more.
The question that remains in determining whether claimants, as members of a bargaining unit, were ineligible for benefits is whether the appeal board’s finding that they had written contracts continuing their services for the school year or term commencing in September, 1978 was irrational or unreasonable. If it was neither, it must be upheld (Matter of Howard v Wyman, 28 NY2d 434, 438), for the question, involving policy considerations relating to the intended scope of the statute, "is one to the determination of which the Appeal Board may bring to bear its own special competence in carrying out the supervisory authority conferred on it by the Legislature” (Matter of Fisher [Levine], 36 NY2d 146, 150).
We find no irrationality or unreasonableness in the board’s conclusion, which was based — as well it might be — on two items. First, there were the June, 1978 notices that their employments would be continued when school resumed, containing definite dates of the terms of employment, which were sent to claimants and, but for claimant Hess who will be mentioned subsequently, by them agreed to in a writing returned to the employer. Coupled with these notices, which extended individual employment offers to the recipients, was the fact of the continuation, under what has become known as the Triborough Doctrine (see Matter of Board of Coop. Educational Servs. of Rockland County v New York State Public Employment Relations Bd., 41 NY2d 753), of the terms and conditions of employment incorporated in the collective bargaining agreements that had expired on June 30, 1978.[3] In light of those two factors assuring claimants of an opportunity of employment in the coming fall and defining the terms of the employment, it was not irrational for the appeal board to conclude that claimants had written contracts disqualifying *331 them from summer recess unemployment benefits under the provision of subdivision 11 of section 590 of the Labor Law. Relevant again is language from J. I. Case Co. v Labor Bd. (321 US 332, 334, supra): "Contract in labor law is a term the implications of which must be determined from the connection in which it appears.” That precept finds application in the determination by the appeal board and makes inapplicable the multitude of cases from the body of general contract law, giving a restricted meaning to the term, cited by claimants.
Subdivision 11 of section 590 was enacted by chapter 675 of the Laws of 1977, the purpose of which chapter was to conform the unemployment insurance provisions of our State’s Labor Law to Federal unemployment compensation legislation. This latter legislation permitted States to disqualify nonprofessional employees of educational institutions from receiving summer recess unemployment insurance benefits if the employees had a "reasonable assurance” of continued employment following the recess (US Code, tit 26, § 3304, subd [a], par [6], cl [A], subcl [ii]). The appeal board also had available to it ample precedent in decisions from other jurisdictions, applying disqualifying provisions in Federal unemployment statutes barring benefits during summer recess to school professional employees with "contracts” for continued employment in the following academic year, that the term "contract” is not always to be given a strict construction and that a reasonable expectation of employment will serve (e.g., Hyduchak v Commonwealth of Pa., Unemployment Compensation Bd. of Review, 35 Pa Commw Ct 575; Harvey v Director of Dept. of Employment Security, — RI —, 385 A2d 1057 [RI]; Robinson v Administrator, Dept. of Employment Security, 356 So 2d 477 [La]; Williamson v Mississippi Employment Security Comm., 347 So 2d 978 [Miss]), in reaching these results it has been of no significance, for this consideration, that an employee to whom a notice of continued employment has been extended has failed — as had claimant Hess — to signify his acceptance of the continuation. A contract, within the meaning of an unemployment benefits ineligibility statute, may exist without a commitment on the part of the employee (see Matter of McCarroll [Ross], 64 AD2d 992). In substance, what is required is to establish that an employee of one academic year will be continued in employment by the educational institution in the following academic year. Evidence on which such a substantive conclusion may properly be predicated may *332 be of differing sorts; the Federal statute specifies proof of a "reasonable assurance”, while subdivision 11 of our State statute calls for a "written contract” or an "individual contract”. That it is the substance of the assurance of continued employment rather than the form of its manifestation is confirmed when in subdivision 8 of our State statute "reasonable assurance” is employed and defined to require evidentiary proof in the form of a "written contract” (§ 590, subd 8).
Similarly, we reject the argument advanced by claimants that, because by enactment of chapter 675 of the Laws of 1977 the Legislature amended subdivision 10 of section 590 (disqualifying professional employees of educational institutions from summer recess benefits who had contracts for continued employment) by adding as a disqualifier a "reasonable assurance” of employment to the prior requirement of a "contract”, but adopted subdivision 11 (covering nonprofessionals) prescribing only a "written contract” or an "individual contract” as disqualifies, a much more stringent ineligibility test— namely, the existence of a formal contract — was being adopted for the latter class of school employees. We do not believe the conclusion claimants would draw is warranted. Rather, it would appear that the addition of the phrase "reasonable assurance” in subdivision 10 resulted from the fact that in 1976 Congress had made a similar addition to the Federal unemployment legislation to which the State Legislature was explicitly seeking to conform (Unemployment Compensation Amendments of 1976, Public L 94-566, § 115, subd [c]; 90 US Stat 2670-2671). Because there was no requirement for conformity by the State with Federal legislation as to nonprofessional employees, however, there was no need to include the phrase "reasonable assurance” in subdivision 11, which covered such employees. Its omission loses significance entirely if it be noted that the addition of the phrase in the Federal legislation applicable to professional employees, as to whom the disqualifying factor had theretofore been stated in terms of a "contract” only, was merely a "technical adjustment” (Harvey v Director of Dept. of Employment Security, — RI —, 385 A2d 1057, 1060 [RI], supra).
We are satisfied that the Industrial Commissioner in the case of each of the claimants now before us was warranted in determining that the mandate of the statute with respect to the existence of a "written contract” had been satisfied.
*333 In each of the appeals the order of the Appellate Division should be affirmed.

. None of the collective bargaining agreements now before us included any provisions for employment of claimants La Mountain, White, Brant, Bunning, Williams or Hess. We have been informed that the cases now before us were selected to serve as precedents and that numerous other cases are being held in abeyance pending the outcome of these appeals. Nowhere is it suggested that an individual contract of hire has been found in any collective bargaining agreement.

. Frequent references in the briefs of claimants’ counsel to the absence of a "job security clause” in the collective bargaining agreements to which these school districts were parties during the 1977-1978 school year appear to suggest that such a clause, if included, might serve as a contract of employment within the agreements. Whether or not that is so is not now necessary to decide in view of our disposition of these appeals. It should not be overlooked however that the present claimants were employed during the 1977-1978 school year for a fixed term coincident with the school year, at the end of which their employment under those contracts ceased by reason of expiration of term. A “job security clause” which mandated only the continuance of particular positions would not necessarily assure the present incumbents of continued employment.

. In the case of the BaMwinsville district, continuation was not a factor because the collective bargaining agreement ran to June 30, 1979.