908 A.2d 99

Jeanine Agnes THOMAS and Luann Sudbrook

v.

DEPARTMENT OF LABOR, LICENSING, AND REGULATION
and Board of Education of Baltimore County.

No. 1475 Sept. Term, 2005.

Court of Special Appeals of Maryland.

Sept. 21, 2006.

652

Jack B. Gohn (Ghone, Hankey & Stichel, L.L.P., on the brief), Baltimore, MD, for appellants.

Margaret–Ann F. Howie, Towson, MD and Gina Serra, Baltimore, MD, for appellees.

Panel: KENNEY, ADKINS and KRAUSER, JJ.

KENNEY, Judge.

The Board of Appeals of the Department of Labor, Licensing, and Regulation denied the separate claims of Jeanine Thomas and Luanne Sudbrook (collectively, "appellants"), for unemployment benefits, concluding that appellants were ineligible under Maryland Code (1991, 1999 Repl. Vol.), § 8–909 of the Labor and Employment Article ("L.E."). The Circuit Court for Baltimore County consolidated appellants' petitions for judicial review, and affirmed the denial of benefits. Appellants present two questions for our review, which we have slightly reworded as follows:

I. Are school bus drivers employed by a county board of education, who have worked for the first of two consecutive academic years or terms and who have a reasonable assurance of performing such work in the forthcoming academic year or term, employed by an "educational institution," thereby rendering them ineligible for benefits for unemployment occurring between the successive academic years or terms under L.E. § 8–909?

II. Does L.E. § 8–909 violate the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights by unlawfully discriminating between those school bus drivers employed by the Maryland public school system and those drivers servicing public schools but employed by private contractors?

For the following reasons, we answer "yes" to the first question and "no" to the second. Therefore, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

Labor and Employment § 8–909 governs unemployment benefits payable to employees of governmental, charitable, educational, and religious organizations and provides, in pertinent part:

(a) *In general.*—Subject to the provisions of this section, benefits based on service in covered employment under §§ 8–208(a) and 8–212(c) of this title shall be payable in the same amount, on the same terms, and subject to the same conditions as benefits payable on the basis of other service in covered employment.

\* \* \*

(c) *Same—Services performed in other capacities.*—(1) With respect to services performed for an educational institution in any capacity other than instructional, research, or principal administrative, benefits may not be paid on the basis of the services for any week of unemployment that begins during a period between 2 successive academic years or terms.

(2) *This subsection applies to any individual who: (i) performs the services described in this subsection in the first of 2 academic years or terms; and (ii) has a reasonable assurance that the individual will perform the services in the second of the 2 successive academic years or terms; and*

*(ii) has a reasonable assurance that the individual will perform the services in the second of the 2 successive academic years or terms.*

(3) Before July 1 of each year, each educational institution shall provide the Department with the name and Social Security number of each individual who has a reasonable assurance of performing covered employment described under this subsection in the next academic year.

(4) If an individual whose name and Social Security number are required to be submitted to the Department under paragraph (3) of this subsection is not given an opportunity to perform the services for the educational institution for

the next successive year or term, the individual shall be eligible for benefits retroactively if the individual:

(i) files a timely claim for each week;

(ii) was denied benefits solely under this subsection; and

(iii) is otherwise eligible for benefits.

(d) *Same—Vacations and holidays.*—(1) With respect to services described in subsections (b) and (c) of this section, an individual may not be eligible for benefits based on the services for any week that begins during an established and customary vacation period or holiday recess.

(2) This subsection applies to any individual who:

(i) performs the services in the period immediately before the vacation period or holiday recess; and

(ii) has a reasonable assurance that the individual will perform the services in the period immediately following the vacation period or holiday recess.

*(e) Educational service agencies.*—(1) In this subsection, "educational service agency" means a governmental entity that is established and operated exclusively to provide educational service to one or more educational institutions.

(2) If any service described in subsection (b) and (c) of this section is performed by an individual in an educational institution while in the employ of an educational service agency, the individual is subject to subsections (b), (c), and subsection (d) of this section and benefits may not be paid if not allowed under subsection (b), (c), or (d) of this section.

*(f) Services on behalf of educational institutions.*—If any service described in subsection (a) of this section is provided by an individual to or on behalf of an educational institution, the individual is subject to subsections (b), (c), and (d) of this section and benefits may not be paid if not allowed under subsections (b), (c), and (d) of this section.

"Educational institution" is defined as "an institution that offers participants, students, or trainees an organized course of study or training that is academic, technical, trade-oriented, or preparatory for gainful employment in a recognized occupa-

tion" and includes "an institution of higher education." L.E. § 8–101(n).

Both Thomas and Sudbrook were employed as school bus drivers by the Baltimore County Board of Education ("the Board") for the 2003–04 academic year, essentially on a ten-month basis. At the end of the academic year, Thomas and Sudbrook were each mailed a letter regarding their continued employment with the Board and requesting their route preferences for the next academic term. Appellants both responded to that letter, indicating their desire to return to work the following term and to retain their same respective routes as the prior academic year.

### A. Jeanine Thomas

Thomas's last day of work was June 17, 2004, the last day of the regular academic term. On July 25, 2004, she filed a claim for unemployment insurance benefits with the Department of Labor, Licensing, and Regulation ("the Department"), claiming that she was temporarily laid-off from work for ten weeks or less. Her claim was denied by a Claims Specialist from the Department on August 16, 2004, because, as an employee of an educational institution under L.E. § 8–909(c) and having obtained a reasonable assurance of performing covered employment in the next academic term, she was ineligible for benefits. Thomas appealed to a Hearing Examiner, and a hearing on her claim was held on September 15, 2004. The Hearing Examiner denied Thomas's claim, finding her ineligible under L.E. § 8–909(c). When Thomas appealed the Hearing Examiner's decision to the Board of Appeals of the Department, the Board of Appeals adopted the Hearing Examiner's findings and recommendations. Afterwards, Thomas petitioned for judicial review in the Circuit Court for Baltimore County.

### B. Luann Sudbrook.

Following the conclusion of the 2003–2004 regular academic year, the Board afforded Sudbrook work as a private contractor during the summer of 2004. Her final day of employment was July 30, 2004, and, on August 11, 2004, she filed a claim

for unemployment benefits. A Department Claims specialist determined that L.E. § 8–909(c) applied to Sudbrook's claim and denied her benefits. In a hearing before the Hearing Examiner, Sudbrook argued that L.E. § 8–909(c) unfairly discriminated against her because school bus drivers employed by private contractors were eligible for benefits during the break between academic terms, while those drivers employed by the Board were not. Unpersuaded, the Hearing Examiner denied Sudbrook's claim on September 19, 2004. When the Board of Appeals adopted the findings and conclusions of the Hearing Examiner, Sudbrook petitioned the Circuit Court for Baltimore County for judicial review. Her case was consolidated with Thomas's petition.

### C. Proceedings in the Circuit Court.

Following a hearing, the circuit court affirmed the decision of the Board of Appeals. It found that both Thomas and Sudbrook were ineligible for benefits under L.E. § 8–909(c). This timely appeal followed.

## STANDARD OF REVIEW

The standard of judicial review of a decision of the Board of Appeals is governed by L.E. § 8–512(d), which provides:

(d) *Scope of Review.*—In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) the findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

"Under this statute, the reviewing court shall determine only: '(1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision.' " *Department of Labor, Licensing, & Regulation v. Hider,* 349 Md. 71, 77–78, 706 A.2d 1073 (1998) (quoting *Baltimore Lutheran High Sch. Ass'n v. Employment*

*Sec. Admin.*, 302 Md. 649, 662, 490 A.2d 701 (1985)). We " 'may not reject a decision of the Board supported by substantial evidence unless that decision is wrong as a matter of law.' " *Hernandez v. Dep't of Labor, Licensing, & Regulation*, 122 Md.App. 19, 23, 711 A.2d 243 (1998) (quoting *Hider*, 349 Md. at 78, 706 A.2d 1073). "The test for determining whether the Board's findings of fact are supported by substantial evidence is whether reasoning minds could reach the same conclusion from the facts relied upon by the Board." *Hider*, 349 Md. at 78, 706 A.2d 1073 (citing *Baltimore Lutheran*, 302 Md. at 661–662, 490 A.2d 701).

## DISCUSSION

### I.

■ Appellants concede that they performed services for the Board for at least one academic term immediately prior to the period for which they seek unemployment benefits and that they had obtained a reasonable assurance of performing such services in the second of the two successive academic terms. But, according to appellants, L.E. § 8–909(c) does not render them ineligible for unemployment benefits because they are not employed by an "educational institution" as defined by L.E. § 8–101(n). Appellants, who are employed by the Board, argue that "a school board, as opposed to an individual school, is not itself an educational institution. Rather it is an organization through which educational institutions, *i.e.*, individual schools, are regulated." Therefore, appellants "did not 'render services for an educational institution' and are not barred from receiving benefits under the plain meaning of [L.E.] § 8–909(c)."

The Department and the Board argue that the plain language of the statute and the purported purpose of the disqualification provisions clearly indicate that the Board is an "educational institution." And, because appellants had a reasonable assurance of continued employment, L.E. § 8–909(c) rendered them ineligible for unemployment benefits.

■ The Court of Appeals "has stated many times 'that the cardinal rule of statutory construction is to ascertain and effectuate legislative intention.'" *State v. Green*, 367 Md. 61, 81, 785 A.2d 1275 (2001) (quoting *Mayor of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987 (2000)). When we interpret a statute, our starting point is always the text of the statute. *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 251, 753 A.2d 501 (2000). "[I]f the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473, 784 A.2d 569 (2001). The plain meaning rule is "elastic, rather than cast in stone[,]" and if "persuasive evidence exists outside the plain text of the statute, we do not turn a blind eye to it." *Adamson*, 359 Md. at 251, 753 A.2d 501 (citing *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 513–14, 525 A.2d 628 (1987)).

"[I]n determining a statute's meaning, courts may consider the context in which a statute appears, including related statutes and legislative history." *Ridge Heating, Air Conditioning & Plumbing v. Brennen*, 366 Md. 336, 350–51, 783 A.2d 691 (2001). We often look to the legislative history, an agency's interpretation of the statute, and other sources for a more complete understanding of what the General Assembly intended when it enacted particular legislation. *See Harris v. State*, 331 Md. 137, 146, 626 A.2d 946 (1993). "We may also consider the particular problem or problems the legislature was addressing, and the objective it sought to attain." *Sinai Hosp. of Baltimore, Inc. v. Dep't of Employment and Training*, 309 Md. 28, 40, 522 A.2d 382 (1987). "This enables us to put the statute in controversy in its proper context and thereby avoid unreasonable or illogical results that defy common sense." *Adamson*, 359 Md. at 252, 753 A.2d 501.

■ "In the context of unemployment insurance law, because of its remedial nature, its provisions are liberally construed in favor of eligibility for benefits." *Department of*

*Econ. & Employment Dev. v. Taylor,* 108 Md.App. 250, 268, 671 A.2d 523 (1996) (citing *Sinai Hosp.,* 309 Md. at 40, 522 A.2d 382). Accordingly, "provisions that disqualify claimants from receiving benefits are construed narrowly." *Id.*

Initially, we recognize that, in order to qualify for federal funding for this State's unemployment insurance program and for private employer's in Maryland to be eligible for federal tax credits for unemployment contributions, Maryland's unemployment compensation laws must comply with the standards set forth in the Federal Unemployment Tax Act of 1954 ("FUTA"), *codified at* 26 U.S.C. §§ 3301–3311 (1997). Through the 1970 amendments to FUTA, for the first time states were required to pay unemployment compensation to otherwise eligible employees of institutions of higher learning. *See generally* S.Rep. No. 91–752 (1970), *reprinted in* 91st Cong., 2nd Sess., 1970 U.S.Code.Cong. & Admin.News. 3606. Under the 1970 amendments, however, "faculty, research, and administrative employees of institutions of higher education were not considered unemployed during the summer vacation if they had a contract to resume work after the summer vacation." *Id.* at 3609, 3617–18. The ineligibility provision sought to exclude those employees "who can plan for temporary unemployment and thus do not truly suffer from economic insecurity." Maribeth Wilt–Seibert, *Unemployment Compensation for Employees of Educational Institutions: How State Courts Have Created Variations on Federally Mandated Statutory Language,* 29 U. Mich. J.L. Reform 585, 588 (1996) (citing *Haynes v. Pennsylvania,* 65 Pa.Cmwlth. 541, 442 A.2d 1232, 1233 (1982)).

In 1976, FUTA was again amended to render professional employees of elementary and secondary educational institutions ineligible for unemployment benefits for unemployment occurring between academic terms, where such employees had a reasonable assurance of returning to work in the successive academic term. Unemployment Compensation Amendments of 1976, Pub.L. No. 94–556 § 115, 90 Stat. 2667 (1976). As the United States Court of Appeals for the Seventh Circuit ex-

plained in *Chicago Teachers Union v. Johnson*, 639 F.2d 353 (7th Cir.1980):

The period excluded under 26 U.S.C. § 3304, Part A, s 203(b) was intended to be that period characteristic to the educational profession and within the expectation of the teachers. The legislative history surrounding this section shows that it intended for all professional educational workers to be treated the same during the summer break:

"In the absence of this prohibition, a number of states have indicated that they find no provision in their laws by which they can deny emergency assistance to professional educational workers who are only temporarily unemployed during this period. Payment of such emergency assistance to workers who have contracts for the succeeding school term would be contrary to the treatment of their counterparts in institutions of higher education, who are covered under regular unemployment insurance. In Public Law 91–373, Congress mandated that college and university teachers, researchers, and administrators with contracts for both terms be denied benefits with respect to the periods between terms."

*Id.* at 357 (quoting S.Rep. No. 94–208, 94th Cong. 1st Sess. 5–6, *reprinted in* (1975) U.S.Code Cong. & Admin.News 377, 382).

In addition, states were *permitted* to deny "benefits based on services performed for educational institutions to nonprofessional school employees during periods between academic years or terms if there [wa]s a reasonable assurance that the individual w[ould] be employed by the educational institution in the forthcoming academic year." H.R. Conf. Rep. 94–1745 *(reprinted in* 94th Cong., 2nd Sess., 1976 U.S.Code.Cong. & Admin.News 6032, 6035–36). *See also* Patricia C. Kussmann, *Right to Unemployment Compensation or Social Security Benefits of Teacher or Other School Employee*, 33 A.L.R. 5th 643 § 2(a) (1995). FUTA was amended in 1977 to permit states to extend the ineligibility provisions applicable to nonprofessional school employees to vacation periods. Emergen-

cy Unemployment Compensation Extension Act of 1977, Pub.L. No. 95–19, § 302, 91 Stat. 39, 44 (1977).

The ineligibility provision applicable to professional and nonprofessional school employees was also extended to apply to employees of "educational service agencies." *Id.* The Senate Report concerning the 1977 amendments stated, in relevant part:

Public Law 94–566 required States to cover virtually all State and local government employees under their unemployment compensation programs. Because of the special work patterns of school employees, this legislation required that benefits not be paid during regular vacation periods to teachers who have a reasonable expectation of reemployment at the end of the vacation. Nonprofessional school employees could, at State option, be excluded from benefits during vacation periods on the same basis.

As the statute was drawn, however, these exclusions apply only to individuals who are actually employed by educational institutions. In a number of States there are separate State agencies set up to provide specialized services to many schools. For example, such agencies may provide driver education and audiovisual services to all schools in the State and employees of these agencies may travel from school to school providing these services. Since such employees are in every respect the equivalent of school personnel and follow the same work and vacation patterns, it seems appropriate to apply the same benefit exclusions during vacation periods to these employees as are applied to persons who are directly employed by schools.

The committee bill would extend to such individuals the provisions under which professional employees must be denied benefits during vacation periods (and nonprofessional employees may be denied such benefits) where there is reasonable expectation of reemployment at the end of the vacation.

S. Rep. 95–456, at 6 (1977) *(reprinted in* 95th Cong., 1st Sess., 1977 U.S.Code.Cong. & Admin.News 3579, 3583–84).

Finally, in 1983, Congress required that states deny benefits to *all employees* of educational institutions and educational service agencies, including nonprofessional employees and those serving in capacities other than instructional, research, or principally administrative for periods between academic terms or years, or during customary vacation periods, where such employees had a reasonable expectation of continued employment. Social Security Amendments of 1983, Pub.L. No. 98–21, § 521, 97 Stat. 65, 147–48 (1983). As currently codified, FUTA provides, in pertinent part:

(a) Requirements.—The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

(6)(A) compensation is payable on the basis of service to which section 3309(a)(1) applies, in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to such law; except that—

(i) with respect to services in an instructional, research, or principal administrative capacity for an educational institution to which section 3309(a)(1) applies, compensation shall not be payable based on such services for any week commencing during the period between two successive academic years or terms (or, when an agreement provides instead for a similar period between two regular but not successive terms, during such period) to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms,

(ii) with respect to services in any other capacity for an educational institution to which section 3309(a)(1) applies—

(I) compensation payable on the basis of such services may be denied to any individual for any week which commences during a period between 2 successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a

reasonable assurance that such individual will perform such services in the second of such academic years or terms, except that

(II) if compensation is denied to any individual for any week under subclause (I) and such individual was not offered an opportunity to perform such services for the educational institution for the second of such academic years or terms, such individual shall be entitled to a retroactive payment of the compensation for each week for which the individual filed a timely claim for compensation and for which compensation was denied solely by reason of subclause (I),

(iii) with respect to any services described in clause (i) or (ii), compensation payable on the basis of such services shall be denied to any individual for any week which commences during an established and customary vacation period or holiday recess if such individual performs such services in the period immediately before such vacation period or holiday recess, and there is a reasonable assurance that such individual will perform such services in the period immediately following such vacation period or holiday recess,

(iv) with respect to any services described in clause (i) or (ii), compensation payable on the basis of services in any such capacity shall be denied as specified in clauses (i), (ii), and (iii) to any individual who performed such services in an educational institution while in the employ of an educational service agency, and for this purpose the term "educational service agency" means a governmental agency or governmental entity which is established and operated exclusively for the purpose of providing such services to one or more educational institutions,

(v) with respect to services to which section 3309(a)(1) applies, if such services are provided to or on behalf of an educational institution, compensation may be denied under the same circumstances as described in clauses (i) through (iv), and

(vi) with respect to services described in clause (ii), clauses (iii) and (iv) shall be applied by substituting "may be denied" for "shall be denied", and

(B) payments (in lieu of contributions) with respect to service to which section 3309(a)(2) applies may be made into the State unemployment fund on the basis set forth in section 3309(a)(2)[.]

26 U.S.C. § 3304(a)(6).

The legislative intent is clear from the plain language and statutory scheme as well as the legislative history; the General Assembly sought to deny unemployment benefits to school employees during scheduled and anticipated holidays, vacations, and breaks between academic terms when the employee has a reasonable assurance of continued employment. The unemployment insurance law was created to "prevent the spread of involuntary unemployment and to lighten its burden, which often falls with crushing force on the unemployed worker and the family of the unemployed worker." L.E. § 8–102(b)(2). In the case of employees such as appellants, who are essentially employed on a ten-month basis, the period of unemployment between academic terms is expected and permits the employee to plan for periods in which he or she will not receive a paycheck. As one court has explained, "[t]he rationale for this limitation is that school employees can plan for those periods of unemployment and thus are not experiencing the suffering from unanticipated layoffs that the employment-security law was intended to alleviate." *Baker v. Dep't of Employment and Training Bd. of Review*, 637 A.2d 360, 363 (R.I.1994). *See also University of Toledo v. Heiny*, 30 Ohio St.3d 143, 507 N.E.2d 1130, 1133 (1987) (stating that the provisions of that state's unemployment compensation legislation, which allowed benefits to unemployed nonprofessional employees of educational institutions "whose employment prospects for the ensuing academic year are doubtful," "was not enacted to 'subsidize the vacation periods of those who know well in advance that they may be laid off for certain specified periods'") (quoting *Davis v. Pennsylvania, Unem-*

*ployment Compensation Bd. of Review,* 39 Pa.Cmwlth. 146, 394 A.2d 1320, 1321 (1978)).

The disqualification provisions of L.E. § 8–909 relating to employees of "educational institutions" and "educational service agencies" are in conformity with FUTA, and presumably were adopted by the General Assembly in order to become eligible for federal funding and tax benefits. *See* L.E. § 8–103(a) ("To the extent necessary to ensure that the United States Secretary of Labor certifies this title under § 3304 of the Internal Revenue Code and unless this title clearly indicates an intent to the contrary, this title shall be construed in a manner consistent with the relevant provisions of the Internal Revenue Code, the Federal Security Act, the Federal–State Extended Unemployment Compensation Act of 1970, and the Federal Trade Act of 1974.").

Labor and Employment § 8–101(n) defines "educational institution" as "an institution that offers participants, students, or trainees an organized course of study or training that is academic, technical, trade-oriented, or preparatory for gainful employment in a recognized occupation," and includes "an institution of higher education." In contrast, L.E. § 8–909(e) defines "educational service agency" as "a governmental entity that is established and operated exclusively to provide educational services to one or more educational institutions."

Maryland Code (2003), § 3–103 of the Education Article ("Educ.") establishes a county board of education for each county of this State and for Baltimore City. Under Educ. §§ 4–101–111, each board of education is responsible for controlling "educational matters that affect that count[y]," establishing public schools, hiring school personnel, including principals and teachers, setting employees' salaries, and creating curriculum guides and courses of study. County boards are also responsible for arranging for transportation of students to and from consolidated schools. Educ. § 4–120. In other words, individual public schools are an extension of the respective board, not separate educational institutions.

Courts in other jurisdictions have similarly concluded that bus drivers employed by local school districts were employed by "educational institutions," within the definition of that jurisdiction's unemployment compensation law, such that they were ineligible for benefits between academic terms when they had a reasonable assurance of continued employment for the next academic year or term. *See, e.g., Becotte v. Gwinn Schools*, 192 Mich.App. 682, 481 N.W.2d 728 (1991); *La Mountain v. Westport Central School District*, 51 N.Y.2d 318, 434 N.Y.S.2d 171, 414 N.E.2d 672 (1980); *North Penn School District v. Unemployment Compensation Bd.*, 662 A.2d 1161 (Pa.Cmwlth.Ct.1995). *See also Valot v. Southeast Local School District Bd. of Educ.*, 107 F.3d 1220, 1224 (6th Cir.1997) (recognizing that a change in school district procedure, whereby all substitute employees of the school district, including substitute bus drivers, were given a reasonable assurance of continued employment for the following school year rendered "those employees ineligible for unemployment compensation under [an] Ohio law," which is in substantial conformity with L.E. § 8–909).

Clearly, L.E. § 8–909 was intended by the General Assembly to institute the requirements of FUTA and deny eligibility to all those educational workers employed by educational institutions, including public school boards, who have been employed for at least one year and who had a reasonable assurance of continued employment for the next successive academic term. Therefore, the Board of Appeals did not err in concluding that appellants were ineligible for benefits under L.E. § 8–909(c).[1]

---

1. Neither party raised the application of L.E. § 8–909(e), which renders employees of "educational service agencies" ineligible for benefits for the period between academic terms or for vacation periods where they have performed "educational services" "in an educational institution" for the first of two consecutive academic terms and given a reasonable assurance of continued employment for the next academic term. Because we conclude that the county boards of education satisfy the L.E. § 8–101(n) definition of "education institution," we need not consider whether they might alternatively satisfy the L.E. § 8–909(e)(1) definition of "educational service agency."

## II.

■ Appellants next contend that L.E. § 8–909(c) violates the Due Process Clause of the Fourteenth Amendment and the Maryland Declaration of Rights because it discriminates between those school bus drivers employed by county boards of education and those employed by private contractors. According to appellants, under *Attorney General of Maryland v. Waldron,* 289 Md. 683, 426 A.2d 929 (1981), and the cases cited therein, our analysis of their equal protection claims involves an intermediate scrutiny or "heightened scrutiny" review, and that no explanation has been offered by the Board to justify the disparate treatment of privately and publicly employed school bus drivers. Appellants also argue that L.E. § 8–909(c) is not rationally related to any legitimate government interest.

■ Initially, we must consider the standard of review applicable to appellants' equal protection claims. As the Court of Appeals explained in *Waldron,* absent a statute that impinges upon a fundamental right or provides for disparate treatment based upon a suspect classification, where strict scrutiny applies, courts generally employ rational basis review. 289 Md. at 706, 426 A.2d 929. A suspect classification includes classifications based on race, ancestry, and national origin. *Id.* Fundamental rights are those rights or interests secured "explicitly or implicitly" by the federal constitution, and include the right to vote, the right to interstate travel, the right of equal access to a criminal appeal, and the right to procreate. The receipt of unemployment benefits is not a fundamental right secured by the federal constitution and bus drivers employed by educational institutions are not a suspect classification.

Appellants also correctly note that courts employ "intermediate scrutiny" to analyze equal protection where the statute involves "sensitive classifications," such as classifications based on gender and, probably, legitimacy, or where the statute implicates " 'important' personal interests or work[s] a 'significant interference with liberty or a denial of a benefit vital to

the individual.'" *Waldron,* 289 Md. at 711, 426 A.2d 929 (quoting Lawrence H. Tribe, American Constitutional Law § 16–3, 996 (1978)). Under intermediate scrutiny or heightened review, "to be sustained the classification 'must serve important government objectives and must be substantially related to achievement of those objectives.'" *Murphy v. Edmonds,* 325 Md. 342, 358, 601 A.2d 102 (1992) (quoting *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976)).

In this case, there is no "sensitive classification," and we are not persuaded that appellants' claims to unemployment benefits necessitate an invocation of heightened scrutiny. Accordingly, we apply the rational basis standard, under which "a statutory classification is struck down, in the oft-expressed words of the Supreme Court, only if the means chosen by the legislative body are 'wholly irrelevant to the achievement of the State's objective.'" *Waldron,* 289 Md. at 707, 426 A.2d 929 (quoting *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)). *See Watkins v. Cantrell,* 736 F.2d 933, 945 (4th Cir.1984) ("Where a state's unemployment insurance compensation statute neither involves a discernable fundamental interest nor affects any protected class with particularity, the relatively relaxed 'rational basis' standard should be applied in determining whether the statute violates the Equal Protection Clause.") (citing *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977)). *See also, Zambrano v. Reinert,* 291 F.3d 964 (7th Cir.2002)(applying rational basis review in considering a petitioner's claim that a Wisconsin statute, which disqualified certain seasonal workers employed in processing fruits and vegetables from unemployment benefits, was violative of the Equal Protection clause).

As noted above, L.E. § 8–909 was enacted to exclude those individuals employed by educational institutions and with a reasonable assurance of continued employment from eligibility for unemployment benefits during regularly scheduled periods of unemployment. Congress had concluded that, because

those employed by educational institutions know of scheduled breaks in employment they should be prepared for the breaks that regularly occur in their chosen employment and should prepare for them. The statute is rationally related to achieving its objective. The General Assembly presumably enacted L.E. § 8–909 to comply with the federal mandate, designed to prevent the subsidization of vacation periods for school employees. *See* L.E. § 8–130(a) ("To the extent necessary to ensure that the United States Secretary of Labor certifies this title under § 3304 of the Internal Revenue Code and unless this title clearly indicates an intent to the contrary, this title shall be construed in a manner consistent with the relevant provisions of the Internal Revenue Code, the Federal Social Security Act, the Federal–State Extended Unemployment Compensation Act of 1970, and the Federal Trade Act of 1974.").

Courts in other jurisdictions have also concluded that state unemployment compensation laws do not violate equal protection because they render nonprofessional employees of educational institutions ineligible for benefits between academic terms where the employee has a reasonable assurance of employment for the next academic term, while granting benefits to employees engaged in the same vocation, but not employed by, or rendering services exclusively for, educational institutions. *Herrera v. Industrial Comm'n,* 197 Colo. 23, 593 P.2d 329 (1979) (applying rational basis to a Denver Public Schools food service worker's claim that a Colorado statute, which disqualified nonprofessional employees of educational institutions from unemployment benefits between academic terms, deprived her of equal protection and concluding that the function of the 1976 amendments to FUTA "was not to unreasonably distinguish [nonprofessional] school employees from other seasonally employed workers, but to combine them with another class to whom they are the most similarly situated: professional school employees who can reasonably expect to be rehired at the onset of the next school year"); *Larkin v. Appeal Bd. of Empl. Security Comm'n,* 89 Mich. App. 199, 280 N.W.2d 483 (1979) (applying rational basis to an

equal protection claim brought by school hall monitor and holding that a Michigan statute making nonprofessional school employees ineligible for unemployment benefits was rationally related to legitimate state interest of safeguarding "the stability of school district unemployment funds"). *See also Imel v. Dep't of Employment,* 99 Idaho 224, 580 P.2d 70 (1978) (rejecting teacher's claim that she was denied equal protection under an Idaho statute making teachers ineligible for benefits between academic terms and concluding that Congress "did not consider teachers as those facing [an] economic crunch"); *Riddel v. Dep't of Employment Sec.,* 140 Vt. 82, 436 A.2d 1086 (1981) (concluding that a teacher's aide was not denied equal protection under a Vermont statute rendering employees working in an instructional capacity for an educational institution ineligible for benefits between academic terms where she had a reasonable assurance of continued employment for the next academic term). Although privately employed bus drivers may not be subject to the exclusion provisions of L.E. § 8–909, any perceived inequitable treatment of privately employed and publicly employed school bus drivers is a matter for the legislature to address.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**