Amy LEWIS, Relator,

v.

**WEST SIDE COMMUNITY HEALTH SERVICES, INC., Respondent,**

**Department of Employment and Economic Development, Respondent.**

No. A10–2014.

Court of Appeals of Minnesota.

Aug. 15, 2011.

Amy B. Lewis, Stillwater, MN, pro se relator.

West Side Community Health Services, Inc., St. Paul, MN, for respondent employer.

Lee B. Nelson, Department of Employment and Economic Development, for respondent department.

Considered and decided by WORKE, Presiding Judge; WRIGHT, Judge; and WILLIS, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to     Minn. Const. art. VI, § 10.

## OPINION

WORKE, Judge.

Relator challenges the decision of an unemployment-law judge (ULJ) that she is ineligible to receive benefits, arguing that the ULJ erred in concluding that she was employed by an educational-service agency and her wages earned from the school contractor could not be used to calculate her weekly benefit amount. We affirm.

## FACTS

Relator Amy Lewis is employed by respondent West Side Community Health Services, Inc. (West Side) as a clinical social worker. She provides mental-health counseling at Como Park Senior High School (Como), part of the St. Paul Public School District (school district), during the academic year.

West Side is a nonprofit organization and a federally designated health center that has operated school-based clinics within the school district since 2004. West Side has a Memorandum of Agreement (agreement) with the school district formalizing the parties' relationship, providing that West Side offers comprehensive school-based health services at the senior-high schools in the school district. West Side clinics are bound by the academic calendar and do not operate during the summer months when the schools are closed. West Side requires that the students have parental consent, and serves only enrolled students, except for one location where the school district allows West Side to serve former students up to 21 years of age. The school district employs social workers, and is able to provide the services that West Side performs, but has elected to operate under the agreement with West Side. The initial two-year agree-

ment expired on June 30, 2006, but the parties' relationship did not change and they continued to operate under the terms of the original agreement. The parties signed a new agreement on July 10, 2010, which was back-dated to July 1, 2009.[1]

Following the 2009–10 academic year, relator requested unemployment benefits, indicating that she would be leaving employment in June, and anticipated returning in September 2010 for the upcoming academic year. Relator indicated that all of the work that she completed during the preceding 18 months was performed in the school for the educational contractor. Following a hearing, a ULJ determined that relator was ineligible for benefits after concluding that relator worked for a school contractor and had a reasonable assurance that she would return to work the upcoming year. Relator requested reconsideration, and on October 15, 2010, the ULJ affirmed the ineligibility determination, noting that relator repeated arguments made and considered at the hearing. This certiorari appeal followed.

## ISSUE

Did the ULJ err in determining that relator was ineligible to receive unemployment benefits after concluding that she was employed by a school contractor and had a reasonable assurance of employment the following academic year?

## ANALYSIS

■■■ This court reviews a ULJ's decision denying benefits to determine whether a petitioner's substantial rights may have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence in view of the

---

1. The record indicates that the delay in executing a new agreement was most likely at-
   tributable to West Side experiencing a period of transition.

entire record. *See* Minn.Stat. § 268.105, subd. 7(d) (2010). To the extent a ULJ's decision depends on an interpretation of the unemployment-benefit statutes, we apply a de novo standard of review. *Halvorson v. Cnty. of Anoka,* 780 N.W.2d 385, 388–89 (Minn.App.2010). "We view the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ[.] In doing so, we will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Skarhus v. Davanni's Inc.,* 721 N.W.2d 340, 344 (Minn.App.2006) (citations omitted).

Relator asserts six arguments: (1) that West Side does not qualify as an educational-service agency under Minn.Stat. § 268.085, subd. 7(f) (2010); (2) that the agreement is not valid; (3) that the school district cannot provide the services that she provides; (4) that the ULJ's findings are inaccurate; (5) that she received benefits in the past and should be currently eligible; and (6) that similarly situated employees were determined to be eligible for benefits. We address each in turn.

■ The ULJ determined that relator's earned wages fell "within the scope of" Minn.Stat. § 268.085, subds. 7, 8 (2010). These statutory subdivisions pertain to eligibility requirements of school employees and services for school contractors, providing that:

No wage credits in any amount from any employment with any educational institution or institutions earned in any capacity may be used for unemployment benefit purposes for any week during the period between two successive academic years or terms if:

(1) the applicant had employment for any educational institution or institutions in the prior academic year or term; and

(2) there is a reasonable assurance that the applicant will have employment for any educational institution or institutions in the following academic year or term, unless that subsequent employment is substantially less favorable than the employment of the prior academic year or term.

Minn.Stat. § 268.085, subd. 7(a). Relator argues that West Side does not qualify as an "educational institution." The statute applies to employment with an "educational service agency" if relator "performed the services at an educational institution." *Id.,* subd. 7(f). Relator performed services at Como; thus, West Side qualifies under this statute if it is an "educational service agency," which is defined as "a governmental agency or entity established and operated exclusively for the purpose of providing services to one or more educational institutions." *Id.* The subdivision also applies to employment with "a nonprofit organization, if the services are provided to or on behalf of an educational institution or institutions." *Id.*

The record shows that West Side provides services in educational facilities as a "school-based health clinic." The agreement between West Side and the school district states that the school district provides West Side space in senior-high schools in exchange for West Side providing comprehensive school-based health services. Additionally, West Side school-based clinics are bound by the academic calendar and do not operate during the summer when the schools are closed. West Side is an educational-service agency. Additionally, West Side is a non-profit entity and qualifies under this statute as a non-profit entity providing services to or on behalf of an educational institution.

■ Relator is ineligible for unemployment benefits because she is employed as a clinical social worker by West Side,

which qualifies as employment with an educational institution. Relator had employment during the academic year in which she applied for benefits and had a "reasonable assurance" of returning to employment with West Side the following academic year. *See id.,* subd. 7(a); *see also City of Pittsburgh, Dep't of Pub. Safety v. Unemployment Comp. Bd. of Review,* 927 A.2d 675, 676, 679 (Pa.Commw.Ct.2007) (school-crossing guard employed by the city ineligible for benefits during period when schools are closed for the summer because city qualifies as an educational-service agency and crossing guard was provided with reasonable assurance of returning to work the following academic year); *Thomas v. Dep't of Labor, Licensing, & Regulation,* 170 Md.App. 650, 908 A.2d 99, 108–09 (Md.Ct.Spec.App.2006) (school-bus drivers employed by board of education ineligible for benefits at the end of the academic year because board qualifies as an educational institution and drivers were provided with a reasonable assurance of continued employment for the next academic year).

Additionally, the public purpose of the unemployment-insurance program is to "provide[ ] workers who are unemployed through no fault of their own a temporary partial wage replacement to assist the unemployed worker to become reemployed." Minn.Stat. § 268.03, subd. 1 (2010). Relator does not require temporary wage replacement to assist her in finding reemployment; she is reasonably assured employment the upcoming academic year. And temporary-wage-replacement assistance is not intended for individuals who are able to plan for temporary unemployment; relator is fully aware that she is employed only during the academic calendar and, as such, is not faced with unforeseen economic insecurity.

Relator next argues that the agreement between West Side and the school district is not valid because the new agreement was not executed during the period for which relator sought benefits. *See* Minn.Stat. § 268.085, subd. 8(a)(1) (stating that wage credits from an employer may not be used for unemployment-benefit purposes if the employment was provided under a contract between the employer and a secondary school). The original written agreement expired in 2006. But the parties continued their relationship under the terms of the agreement without a break and without a change in the terms of the agreement until a current agreement was executed. The new agreement was backdated to indicate the parties' intent that a contract existed. Thus, West Side and the school district had an agreement, regardless of whether it was a written contract. *See Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.,* 617 N.W.2d 67, 75 (Minn.2000) ("The agreement necessary to form a contract need not be express, but may be implied from circumstances that clearly and unequivocally indicate the intention of the parties to enter into a contract."); *McArdle v. Williams,* 193 Minn. 433, 438, 258 N.W. 818, 820 (1935) (recognizing the validity of an oral contract, stating that "there is no distinction in the effect of a promise whether it is expressed (1) in writing, (2) orally, (3) in acts, or (4)[ ] partly in one of these ways and partly in others").

Relator also argues that the services she provides are services that the school district could not perform. *See* Minn.Stat. § 268.085, subd. 8(a) (stating that wage credits from an employer may not be used for unemployment-benefit purposes if the employment was provided under a contract and was for services that the secondary school could have performed by its employees). The ULJ found that

"[t]he district does employ social workers and could provide the services to students that West Side provides." And the record supports this finding, indicating that the school district employs social workers, but elects to contract with West Side to perform certain services. Relator claims that she provides more in-depth treatment than the school district's social workers. But that shows merely that the school district has an agreement with West Side to perform these services; it does not show that the school district would be without the services absent an agreement with West Side. *See Skarhus,* 721 N.W.2d at 344 (stating that we will not disturb the ULJ's factual findings when the evidence substantially sustains them).

■ Relator next challenges the ULJ's findings, asserting that there is no evidence supporting the ULJ's finding that "[i]t may likely be the case that West Side [ ] provides services in a more efficient and more effective manner than the school district could have." Relator asserts that the services provided by West Side are not more efficient or done in a more effective manner, but, rather, are different services. But even if there were no support for this efficient-and-effective finding, that does not undermine the decision because this finding supported merely the fact that the school district *could* perform the services if West Side were not available to provide services. Further, this finding is not amiss because the school district most likely binds itself to the agreement to receive the benefit of West Side's efficient and effective services.

■ Relator next challenges the ULJ's finding that at the hearing West Side "provide[d] a more complete explanation of the relationship between West Side [ ] and the [school district] and the position of a social worker." Relator claims that there is no evidence to support this finding; however,

the evidence shows exactly that, including an explanation of the reason behind the agreement going unexecuted and the basic state of transition West Side experienced. Further, relator fails to explain how this finding was the basis for the determination that she is ineligible for benefits. Relator also challenges the ULJ's finding regarding whether the agreement between West Side and the school district was "executed." But we have already determined that the oral agreement between the parties was a valid contract.

■ Relator also argues that she received benefits in the past; therefore, she should continue to be eligible for benefits. But relator's receipt of benefits in past years is irrelevant to the inquiry whether relator is currently eligible for benefits. *See* Minn.Stat. § 268.105, subd. 1(b) (2010) (stating that the ULJ conducts a hearing to gather evidence and to ensure that all *relevant* facts are fully developed). Further, receipt of benefits in the past is not a statutory factor analyzed in determining whether an applicant is currently eligible for benefits. *See id.,* subd. 5a (2010) (stating that no decision issued by a ULJ may be used as evidence in "any separate or subsequent action in any other forum ... except proceedings provided for under this chapter, regardless of whether the action involves the same or related parties or involves the same facts"). Finally, there is no reason to render an incorrect decision for the sake of consistency.

■ Lastly, relator argues that because other employees in similar situations were determined to be eligible to receive benefits, she should also be eligible for benefits. But the legislature has determined that "[t]here is no equitable or common law ... allowance of unemployment benefits." Minn.Stat. § 268.069, subd. 3 (2010). And, again, a ULJ decision is not

binding on another ULJ. Minn.Stat. § 268.105, subd. 5a (stating that no ULJ decision "may be held conclusive or binding or used as evidence in any separate or subsequent action ... regardless of whether the action involves the same or related parties or involves the same facts").

## DECISION

The ULJ correctly determined that relator is ineligible for unemployment benefits during the months between academic years because she is employed by an educational-service agency and has a reasonable assurance of employment for the upcoming academic year.

**Affirmed.**