**Dean HALVORSON, Relator,**

v.

**COUNTY OF ANOKA, Respondent,**

**Department of Employment and Economic Development, Respondent.**

No. A09–672.

Court of Appeals of Minnesota.

March 30, 2010.

Debra M. Corhouse, Education Minnesota, St. Paul, MN, for relator.

Robert M.A. Johnson, Anoka County Attorney, Anoka, MN, respondent.

Lee B. Nelson, Amy R. Lawler, Department of Employment and Economic Development, St. Paul, MN, for respondent department.

Considered and decided by MINGE, Presiding Judge; ROSS, Judge; and BJORKMAN, Judge.

## OPINION

MINGE, Judge.

Relator is a teacher at a school within a juvenile-corrections facility. On certiorari appeal, relator argues that the unemployment law judge erred in applying Minn. Stat. § 268.085, subd. 7 (2008), to disallow his claim for unemployment benefits due to a reduction in his summer work hours. We affirm.

## FACTS

Since 1997 relator Dean Halvorson has taught math and physical education at Pines School, which is operated as a part of East Central Regional Juvenile Center (RJC). RJC, a maximum-security facility for delinquent juveniles, is a division of the Anoka County Corrections Department. The staff of Pines School is paid by Anoka County.

Pines School is located in its own building on RJC grounds. Students attend Pines School while confined at RJC. Pines School teachers do not teach at other schools. The teachers are licensed by and the school is approved by the Minnesota Department of Education (MDE). Pines School's students participate in state-standardized tests and earn credit that is transferred to other Minnesota schools.

Pines School has its own administrators and the capacity to serve 170 students. The length of a student's enrollment and the size of the student body varies based on incarceration at RJC. The school calendar has fall, spring, and summer terms. Class offerings over the summer depend on the number of RJC inmates who require summer remedial classes to maintain age-appropriate grade levels. *See* Minn. Stat. § 125A.515, subd. 7(1) (2008) (requiring summer courses for remedial students enrolled in correctional schools).

Pines School's summer enrollment has often been adequate to provide year-round employment to its teachers. During the fall and spring terms, relator typically worked over 37 hours per week. For several years, relator worked seven hours per day, five days per week, for ten weeks during summers. However, about 2005, Pines School stopped offering physical education in the summer, and relator worked as a math tutor. In the summer of 2007, the school only operated four days a week and for less than ten weeks. As a result of decreased enrollment in the summer of 2008, the school only offered relator a tutoring position with reduced hours: four and a half hours per day, four days per week, for six weeks. Relator's work as a teacher for the 2008–09 fall and spring term was set to resume at full-time levels.

As a result of the 2008 summer-hour reduction, relator applied for unemployment benefits. The Department of Employment and Economic Development (DEED) denied benefits on the ground that relator was the employee of an educational institution and the summer hours were between successive terms in which he was able to work full-time. This certiorari appeal followed.

## ISSUES

I. As a teacher at Pines School, does relator work "with [an] educational institution" within the meaning of Minn.Stat. § 268.085, subd. 7 (2008)?

II. Did relator's employment situation during the 2008 summer term qualify as being between "successive academic years" pursuant to Minn.Stat. § 268.085, subd. 7?

## ANALYSIS

■ The educational-wage provision of Minnesota's unemployment law provides:

(a) No wage credits in any amount from any employment with any educational institution or institutions earned in any capacity may be used for unemployment benefit purposes for any week during the period between two successive academic years or terms if:

(1) The applicant had employment for any educational institution ... in the prior academic year or term; and

(2) There is a reasonable assurance that the applicant will have employment for any educational institution ... in the following academic year or term, unless that subsequent employment is substantially less favorable than the employment of the prior academic year or term.

. . . .

(f) This subdivision ... applies to employment with Minnesota or a political subdivision, or a nonprofit organization, if the services are provided to or on behalf of an educational institution or institutions.

. . . .

(l) An "educational institution" is an educational entity operated by Minnesota or a political subdivision or an instrumentality thereof. . . .

Minn.Stat. § 268.085, subd. 7. In sum, for employees of an "educational institution," time off "between successive school years is not severance of the employment relationship warranting reemployment insurance benefits." *Sparrow v. Indep. Sch. Dist. 272,* 534 N.W.2d 551, 553 (Minn.App. 1995).

■ Although relator's job title is *teacher* and he works at a school, whether he is eligible for unemployment compensation benefits hinges on the application of the statutory definitions. *Johnson v. Indep. Sch. Dist. No. 535,* 291 N.W.2d 699, 702 (Minn.1980). In ascertaining the meaning of a statute, the court seeks to effectuate the intention of the legislature. Minn.Stat. § 645.16 (2008). The unemployment-insurance scheme is for the benefit of persons attached to the labor market but unemployed through no fault of their own. Minn.Stat. § 268.031, subd. 1 (2008); *Olson v. Starkey,* 259 Minn. 364, 368, 107 N.W.2d 386, 389 (1961). To effectuate that end, courts narrowly construe statutory provisions that disqualify a person from unemployment benefits. *Work Connection, Inc. v. Bui,* 749 N.W.2d 63, 70 (Minn. App.2008), *review granted* (Minn. June 18, 2008) *and appeal dismissed,* 767 N.W.2d 688 (Minn. July 6, 2009).

When reviewing the decision of a ULJ, this court reverses or modifies if "the findings, inferences, conclusion, or decision are ... in excess of the statutory authority or jurisdiction of the department [or] affected by other error of law." Minn.Stat. § 268.105, subd. 7(d) (2008). The court will "exercise independent judgment" in

reviewing the ULJ's legal conclusions. *Stottler v. Meyers Printing Co.*, 602 N.W.2d 916, 918 (Minn.App.1999). Statutory interpretation concerns a pure question of law. *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 122 (Minn.2007). Because no factual questions are presented by this appeal, our review of the questions concerning the application and interpretation of the statute is de novo.

## I.

■■■ The first issue is whether relator's teaching at Pines School is covered by the phrase "employment with [an] educational institution" in Minn.Stat. § 268.085, subd. 7(a).[1] An "educational institution" is defined as an "educational entity operated by Minnesota or a political subdivision or an instrumentality thereof." *Id.*, subd. 7(*l*). As a part of Anoka County or RJC, Pines School is undisputedly operated by a state political subdivision or instrumentality thereof. The question, then, is whether relator's work is "with" an "educational entity."

■■ Relator argues that he does not work with an "educational entity" because neither Anoka County nor RJC, which is his employer, has a primarily educational purpose. Relator's test asks (a) who pays the employee and (b) whether that payor's main purpose is education. This test is too narrow. The statutory provision under consideration does not require that the political or nonprofit entity that pays the employee or operates the school be an organization whose sole or principle purpose is education. It only requires that the worker be employed "with" an "educational entity" under the state's operational umbrella. Minn.Stat. § 268.085, subd. 7(a)(1). Restricting qualifying employees to those paid by traditional school systems would exclude educational workers that may be paid directly by a city, the state, or an outside organization. Such a strict interpretation would be problematic, considering the variety of school forms found in an educationally innovative state such as ours. Relator's strict reading would also, in effect, create an unfair distinction between school personnel based on the school's funding source or unique format. For this reason, we do not agree with relator that working *with* an entity necessarily equates to being paid by it.

We instead read the statute to ask, in essence, whether the organization that manages the employee's workplace and position is an educational entity. Using this standard, we consider Pines School the entity that relator maintains "employment with." An *entity* is defined as "something that exists as a discrete unit." *American Heritage Dictionary* 468 (4th ed. 2002).

---

1. Other states have addressed a similar issue. The Federal Unemployment Tax Act (FUTA) gives tax credits to employers that pay into a state unemployment-compensation fund. 26 U.S.C. § 3302 (2006). As a condition of receiving the tax credit, federal law mandates that states adopt certain statutory language. 26 U.S.C. § 3304 (2006). Thus, nearly every state has provisions similar to the Minnesota provision at issue. *See, e.g.,* Iowa Code § 96.4(5)(a) (2008); N.Y. Lab. Law § 590(10) (McKinney 2008). Interpreting those provisions, various states have defined employment with, for, or in an educational institution. *See, e.g., Multnomah Educ. Serv. Dist. v. Employment Div.*, 119 Or.App. 138, 849 P.2d 558, 560 (1993) (finding employee of educational-services district works "for an educational institution"); *City of Milwaukee v. Dep't of Indus., Lab. & Human Rel.*, 106 Wis.2d 254, 316 N.W.2d 367, 371 (1982) (finding crossing guards paid by cities not employed "for an educational institution"). For analysis of these decisions and a history of FUTA, see Maribeth Wilt–Seibert, *Unemployment Compensation for Employees of Educational Institutions: How State Courts have Created Variations on Federally Mandated Statutory Language*, 29 U. Mich. J.L. Ref. 585, 603–04 (1996). Because of the disparity in decisions from other states, they are not helpful.

Pines School has its own administration and building, offers multiple educational programs, has 16 licensed teachers and four paraprofessionals, is subject to oversight by the MDE,[2] and provides all-day classes and credits that can be earned towards graduation. Pines School is a bona fide entity in its own right. Relator is a teacher at Pines School. Although the county pays relator, the administration at Pines School manages his workplace and position.

In addition, we note that yet another paragraph of the statute provides that the educational-wage provision applies "to employment with Minnesota or a political subdivision . . . if the services are provided to or on behalf of an educational institution or institutions." Minn.Stat. § 268.085, subd. 7(f). Anoka County is a political subdivision of the state. Credits earned at Pines School are transferrable to other schools. If Pines School did not exist, the public school where RJC is located would be required to provide instruction to RJC residents. Thus, relator's services and those of Pines School are provided by Anoka County "on behalf of" other educational institutions. This reinforces the conclusion that the educational-wage provision in Minn.Stat. § 268.085, subd. 7(a), is applicable to relator.

We affirm the ULJ's finding that relator is employed with an educational institution.

## II.

■ The second issue raised by relator is whether he was improperly denied benefits on the ground that his period of reduced work was between academic terms. Minnesota law limits benefits when the employment lapse is between successive academic years or terms and the employee has received assurance of reemployment in the upcoming school year. Minn.Stat. § 268.085, subd. 7(a). Relator essentially argues that Pines School has an ongoing calendar and erratic enrollment and that his reduced level of employment during the 2008 summer months did not fall "between two successive academic years or terms." The statute and Minnesota caselaw do not define "academic year or term."[3]

We acknowledge that Pines School differs from most schools. Its student body is composed of youth incarcerated at RJC; youth/students are constantly transferring in and out; the school does not award its own diplomas; the state requires the offering of summer credit to remedial students, Minn.Stat. § 125A.515, subd. 7; and the school has often employed teachers through the summer because enrollment demanded it.

Yet, despite Pines School's unconventional character, relator has not estab-

---

2. Minnesota law requires correctional schools to report to and be approved by the state education commissioner. Minn.Stat. § 124D.96 (2008). This legislation is an acknowledgement by the legislature that schools like Pines School are deemed educational institutions or entities. This adds to Pines School's status as an educational institution or entity distinct from but connected to RJC and Anoka County.

3. We again note other states' efforts to apply parallel provisions. Compare *Campbell v. Dep't of Employment Sec.*, 211 Ill.App.3d 1070, 156 Ill.Dec. 336, 570 N.E.2d 812, 819

(1991) (finding "summer months" should not be included in an academic year) *and In re Alexander*, 136 A.D.2d 788, 788–89, 522 N.Y.S.2d 998 (1988) (school clerical worker denied unemployment over summer period despite course offerings year round) *with Evans v. State Dept. of Employment Sec.*, 72 Wash.App. 862, 866 P.2d 687, 689 (1994) (reversing denial of unemployment benefits for community-college teacher because summer term no different than fall or spring terms, despite reduced enrollment in summer). These various decisions are also compared in *Wilt–Seibert, supra,* 602–05.

lished that the academic calendar is sufficiently unlike that found in a typical school setting. School days are full length as required by law. Minn.Stat. § 125A.515, subd. 7. Although the record does not include an academic calendar, the parties recognize that it has traditional fall and spring terms and the presumption that completion of fall and spring terms results in advancement to the next grade. The principal of the school described the fall and spring terms together as an "academic year," after which there is a reduced-enrollment summer term designed to allow students to catch up to appropriate grade levels. There are breaks between each term. Although relator points out that students may begin terms at grade levels that are not age appropriate, this situation exists at all schools to the extent that students are held back based on their individual progress. The student body at Pines School consists of delinquent youth who may more commonly have academic setbacks. However, the record does not include data showing the percentage of students who are not at age-appropriate grade levels, historic student enrollment for various terms, or the course offerings. In sum, the record does not establish that the summer term at Pines School is so different from the kind of summer period envisioned by the statute as not to fall within the statutory phrase "between successive academic years." Minn.Stat. § 268.085, subd. 7.

Furthermore, there is no showing that relator individually or that Pines School's

teachers generally have had contracts or such a tradition of summer employment or of uncertain fall employment as to take their situation out of the normal limit on unemployment benefits for teachers. Relator worked a 37–hour–per–week schedule throughout the 2007–08 fall and spring sessions, had his hours cut during summer months in 2008, and was assured that he would return to regular employment in the fall of 2008. By 2006, relator apparently knew summer work as a teacher was problematic. His 2006 and 2007 summer work had been as a tutor. That relator had received near full-time hours during the summer of 2006 or earlier years does mean that he meets the requirement for unemployment benefits for the summer of 2008. *See Swanson v. Indep. Sch. Dist. No. 625*, 484 N.W.2d 432, 434 (Minn.App. 1992) (citing cases where school employees' summer hours were cut despite full-time employment in previous summer terms), *review denied* (Minn. June 30, 1992). The summer program at Pines School had been scaled back prior to 2008. The summer program had been changing. Regardless, as DEED points out, many public schools have had extensive summer educational programs and employment for teachers.[4]

We affirm the ULJ's conclusion that relator's summer–2008 claim for benefits came between successive academic years.

## DECISION

Pursuant to Minn.Stat. § 268.085, subd. 7, relator was employed with an education-

---

4. We do not conclude that for every teacher at Pines School the summer session is necessarily "between academic years." The Michigan case of *Wilkerson v. Jackson Public Schools* illustrates when a summer session could be considered otherwise. 170 Mich. App. 133, 427 N.W.2d 570 (1988). There, the program under review prepared adults for enrollment in an adult high school, operated consistently throughout the year, advanced learners at an individualized rate, and did not award higher grade levels based on completion of fall and spring terms. *Id.* at 572. The Michigan Court of Appeals, accordingly, found that "the [summer] break periods ... cannot be classified as periods between two successive academic years." *Id.* We find that analysis instructive.

al institution and his reduced employment in the summer of 2008 occurred between academic years with an assurance of full employment in the next school year. Because the statute disallows relator from receiving unemployment benefits in this setting, we affirm.

**Affirmed.**