Cliff VOGE, Relator,

v.

DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.

No. A10–496.

Court of Appeals of Minnesota.

Feb. 8, 2011.

Cliff Voge, Minneapolis, MN, pro se relator.

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent department.

Considered and decided by LARKIN, Presiding Judge; WRIGHT, Judge; and STAUBER, Judge.

## OPINION

WRIGHT, Judge.

Relator challenges the unemployment law judge's (ULJ) decision affirming the Minnesota Department of Employment and Economic Development's state unemployment benefit account determination, arguing that (1) he is entitled to continue receiving federal extended unemployment benefit payments, and (2) his second unemployment benefit year amount should not have been recalculated downward. We affirm.

## FACTS

Relator Cliff Voge worked full-time for Pacioli Companies from November 2004 until June 2008. Beginning in January 2007, he also worked part-time for Hannon

Security. Following the loss of his full-time employment, Voge established a state unemployment benefit account on October 26, 2008. Based on his previous year's income, Voge was eligible to receive a maximum yearly state unemployment benefit amount of $14,716, to be disbursed at Minnesota's maximum weekly unemployment benefit rate of $566. This weekly amount was reduced to $412 because of Voge's part-time earnings. Voge exhausted his maximum yearly state unemployment benefit amount in July 2009 and began receiving federally funded extended unemployment benefit payments for the remainder of the unemployment benefit year.

When Voge's unemployment benefit year expired in October 2009, he became eligible for a second state unemployment benefit account and stopped receiving federal extended unemployment benefit payments. The Minnesota Department of Employment and Economic Development (DEED) calculated Voge's second state unemployment benefit year amount based on wages earned after the effective date of the prior unemployment benefit account, which only included part-time earnings, and determined that his new weekly unemployment benefit amount was $198. Because Voge's weekly income exceeded $198, he was not eligible to receive any payments from his second state unemployment benefit account.

Voge appealed DEED's determination, arguing that he should continue to receive weekly federal extended unemployment benefit payments during the second unemployment benefit year at the previous amount of $566. The ULJ held a telephonic evidentiary hearing and subsequently issued findings of fact and a decision affirming DEED's determination. Voge filed a request for reconsideration, following which the ULJ affirmed his initial decision. This certiorari appeal followed.

## ISSUES

I. Is relator entitled to continued weekly federal extended unemployment benefit payments during his second unemployment benefit year?

II. Was relator's second unemployment benefit year weekly amount correctly calculated?

## ANALYSIS

When reviewing the decision of a ULJ, we may affirm the decision, remand the case for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn.Stat. § 268.105, subd. 7(d) (2008). The interpretation of a statute presents a question of law, which we review de novo. *Halvorson v. Cnty. of Anoka*, 780 N.W.2d 385, 389 (Minn.App.2010).

### I.

Voge first argues that he is entitled to continue receiving the same weekly federal extended unemployment benefit payments that he received from July 2009 until October 2009. An applicant who receives unemployment benefit payments generally is entitled to receive 26 times the weekly unemployment benefit amount for which an applicant qualifies, which equals an applicant's maximum yearly unemployment benefit amount. Minn.Stat. § 268.07, subd. 2(d) (2008). When there is no inter-

ruption in unemployment benefit payments and an applicant's weekly unemployment benefit amount is not reduced for any reason, an applicant may collect the maximum yearly unemployment benefit amount in 26 weeks. But if an interruption or reduction in unemployment benefit payments occurs, it may take more than 26 weeks to collect the maximum yearly unemployment benefit amount or the unemployment benefit year may end before the maximum yearly amount is collected. *See, e.g.*, Minn.Stat. § 268.085, subd. 5(b) (2008) ("If the applicant has earnings, with respect to any week, that [are] less than the applicant's weekly unemployment benefit amount ..., 55 percent of the earnings are deducted from the weekly unemployment benefit amount.").

If an applicant collects the entire unemployment benefit amount before the end of the unemployment benefit year, the applicant may be eligible to receive federal extended unemployment benefit payments. To be eligible for these payments, the applicant must meet the requirements set forth in Minn.Stat. § 268.115, subd. 3 (2008), which conform to the federal requirements of the Federal–State Extended Unemployment Compensation Act of 1970, 26 U.S.C. § 3304 (2006) (EUC Act). Congress has since created intermediate programs, which include the three-tiered emergency unemployment compensation program (EUC program). Supplemental Appropriations Act of 2008, Pub.L. No. 110–252, § 4002, 122 Stat. 2323, *amended by* Unemployment Compensation Extension Act of 2008, Pub.L. No. 110–449, §§ 2–3, 122 Stat. 5014, Worker, Homeownership, and Business Assistance Act of 2009, Pub.L. No. 111–92, §§ 2–3, 123 Stat.

2985 (amending 26 U.S.C. § 3304 (2006)). The EUC program provides an unemployment benefit recipient with continued weekly unemployment benefit payments at the same weekly rate that the recipient had been receiving before the recipient's state unemployment benefit amount was exhausted. These extended unemployment benefit payments last for a limited time.[1]

To be eligible for EUC program extended benefit payments, an applicant must be an "exhaustee," which is an applicant who has no claim to any other state or federal unemployment benefits and who (1) has received the maximum amount of regular unemployment benefit payments available to the applicant before the unemployment benefit year has expired, or (2) has insufficient wage credits to establish a new unemployment benefit account after the unemployment benefit year has expired. Minn.Stat. § 268.115, subds. 1(7), 3 (2008). An applicant is no longer an exhaustee, however, if the applicant earns enough "wage credits" during the current unemployment benefit year to become eligible to establish a second unemployment benefit account after the first unemployment benefit year expires. *Id.*, subd. 1(7); *see* Minn.Stat. § 268.035, subd. 27 (2008) (defining "wage credit" as amount of wages paid during applicant's base period). The result is that the applicant cannot collect any remaining EUC program extended unemployment benefit payments.

On July 22, 2010, the Unemployment Compensation Extension Act of 2010 amended the EUC Act to provide that the second unemployment benefit year payments can be deferred until the remainder

---

1. A recipient who qualifies for the EUC program tier 1 can collect an additional 80 percent of the recipient's maximum yearly benefit amount, lasting for approximately 20 weeks; tier 2 recipients can collect an additional 54 percent, lasting for approximately 14 weeks; and tier 3 recipients can collect an additional 50 percent, lasting for approximately 13 weeks. *Id.*

of the EUC program extended unemployment benefit payments have been fully disbursed if the following three conditions are met: (1) an individual is entitled to EUC program extended unemployment benefit payments, (2) the unemployment benefit year expires before all of the qualifying extended unemployment benefit payments have been disbursed to the individual, and (3) the individual qualifies for a new unemployment benefit year in which the weekly unemployment benefit amount is reduced by either $100 or 25 percent of the previous unemployment benefit year amount. Pub.L. No. 111–205, § 3(a), 124 Stat. 2236. But this amendment is not retroactive. *Id.*, § 3(b).

 In July 2009, Voge exhausted his $14,716 maximum yearly state unemployment benefit amount; and he began receiving weekly federal extended unemployment benefit payments on July 12 that matched the amount he had been receiving. In October 2009, Voge's first unemployment benefit year expired. *See* Minn.Stat. § 268.035, subd. 6 (2008) (defining "benefit year" as 52 weeks from account's effective date). Voge's wages earned from his part-time employment, however, made him eligible to establish a second unemployment benefit account. *See* Minn.Stat. § 268.07, subd. 3 (Supp. 2009) (stating that applicant is eligible for second unemployment benefit account if wages earned after effective date of prior unemployment benefit account equal "at least eight times the weekly unemployment benefit amount of the prior benefit account"). Therefore, Voge no longer was an exhaustee and thus was ineligible to collect the remainder of his EUC program extended unemployment benefit payments. *See* Minn.Stat. § 268.115, subd. 1(7)(ii)

(defining "exhaustee"). Although Voge's weekly unemployment benefit amount calculated for his second unemployment benefit year was reduced to $0, he was no longer an exhaustee when he became *eligible* for state unemployment benefits, regardless of whether he could *collect* those benefits. *See id.* And because the 2010 federal amendment to the EUC Act is not retroactive, it does not apply to Voge's circumstances, which arose in 2009. Thus, the ULJ correctly determined that Voge is not entitled to continue receiving EUC program extended unemployment benefit payments.

**II.**

Voge next contends that his second unemployment benefit year amount was unfairly calculated to be a weekly amount of $198 and subsequently reduced to $0.

An unemployment benefit year amount is derived from a "base period."[2] *See* Minn.Stat. § 268.07, subd. 2(a) (Supp.2009) (explaining calculation of new unemployment benefit year amount); *see also* Minn. Stat. § 268.07, subd. 3 (Supp.2009) (providing that applicant who seeks to establish second benefit year must meet requirements of subdivision 2 and must have performed services in covered employment after the effective date of the prior benefit account). An applicant whose base period earnings are low because of part-time employment, for example, can become eligible for a weekly unemployment benefit amount that is entirely offset by the applicant's income. *See* Minn.Stat. § 268.085, subd. 5(a) (Supp.2009) ("If the applicant has earnings, including holiday pay, with respect to any week ... equal to or in excess of the applicant's weekly unemployment benefit amount, the applicant is ineli-

---

**2.** The "base period" is the first four quarters of the five quarters immediately preceding the date of the unemployment benefit account application. Minn.Stat. § 268.035, subd. 4(b) (Supp.2009).

gible for unemployment benefits for that week."). In this circumstance, an applicant may be eligible for a second unemployment benefit account, which bars the applicant from continuing to collect EUC program extended unemployment benefit payments, but nonetheless be unable to collect any state unemployment benefit payments.

■ Neither Congress nor the Minnesota Legislature attempted to remedy this anomaly until 2010. In addition to the 2010 EUC Act amendment discussed in section I, *supra,* the Minnesota Legislature enacted an uncodified amendment providing that an applicant's recalculated second unemployment benefit year weekly benefit amount cannot be less than 80 percent of the prior unemployment benefit year's weekly benefit amount. 2010 Minn. Laws ch. 347, § 25, at 1097. Although this provision does not permit an applicant to continue collecting EUC program extended unemployment benefit payments after losing exhaustee status, it prevents an applicant's second unemployment benefit year amount from being significantly reduced. But this state legislative amendment, like the federal EUC Act amendment, is not retroactive, and it applies only to unemployment benefit accounts established on or after May 16, 2010. *See id.*

■ DEED calculated the weekly amount of Voge's second unemployment benefit year to be $198, which is 50 percent of his average weekly earnings during his highest-earning quarter of the base period. Minn.Stat. § 268.07, subd. 2(b). Although Voge is eligible for a new unemployment benefit account and thereby ineligible for EUC program extended unemployment benefit payments, because his part-time weekly earnings exceed $198, he cannot collect anything from his second unemployment benefit account. *See* Minn. Stat. § 268.085, subd. 5(a). And the 2010

Minnesota law, which prevents the second unemployment benefit year amount from falling below 80 percent of the first unemployment benefit year amount, does not apply to Voge's circumstances because the law did not take effect until May 16, 2010, 2010 Minn. Laws ch. 347, § 25, at 1097, seven months after his second unemployment benefit year commenced.

Voge argues that this result undermines the purpose of the unemployment benefit statutes because it encourages individuals to forgo part-time work so as to remain eligible for EUC program extended unemployment benefit payments. Notwithstanding the merit of this argument, Minnesota unemployment benefit law expressly prohibits equitable relief. Minn. Stat. § 268.069, subd. 3 (2008). Thus, the ULJ did not err by determining that Voge's new unemployment benefit year weekly benefit amount was properly calculated.

### DECISION

Relator is not entitled to continue receiving federal extended unemployment benefit payments, and relator's second unemployment benefit year weekly benefit amount was properly calculated.

**Affirmed.**