*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0049**


Ja'Na Dickens,
Relator,

vs.

Metropolitan Council,
Respondent,

Department of Employment and Economic Development,
Respondent.


**Filed September 15, 2014
Affirmed
Bjorkman, Judge**


Department of Employment and Economic Development
File No. 31608893-3

Laura Melnick, Meghan R. Scully, Law Offices of Southern Minnesota Regional Legal Services, Inc., St. Paul, Minnesota (for relator)

Metropolitan Council, St. Paul, Minnesota (respondent)

Lee B. Nelson, Munazza A. Humayun, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Relator challenges the decision of the unemployment-law judge (ULJ) that she is ineligible during the period for which she sought benefits because she was not available for or actively seeking suitable employment. We affirm.

**FACTS**

On September 3, 2013, relator Ja'Na Dickens quit her employment as a bus operator for the Metropolitan Council because the position, which required frequent nighttime and weekend shifts, interfered with her ability to care for her terminally ill son. Dickens returned to her former position as a school bus operator, working part-time from 2:00 p.m. to 6:00 p.m. Monday through Friday, but continued looking for an additional part-time or a full-time transportation position. Dickens limited her search to positions with daytime hours and limited weekend work so she could care for her son.

Dickens applied for unemployment benefits. Respondent Minnesota Department of Employment and Economic Development (DEED) determined that Dickens is not subject to the general rule that one who quits employment is ineligible for all unemployment benefits because Dickens quit in order to provide necessary medical care for her son. But DEED determined that Dickens is nonetheless ineligible for benefits because she was not available for suitable employment.

Dickens appealed. While the appeal was pending, Dickens accepted a second part-time position as a courier, and stopped searching for work. Accordingly, the ULJ only considered Dickens's eligibility for benefits between September 8 and October 22,

2013. After an evidentiary hearing, the ULJ found that Dickens was not available for or actively seeking "suitable employment" during this period because she "placed limits on her availability that are not usual for her occupation." The ULJ concluded that Dickens is ineligible for benefits. Dickens sought reconsideration, and the ULJ affirmed. This certiorari appeal follows.

## D E C I S I O N

We review a ULJ's decision to determine whether it is "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn. Stat. § 268.105, subd. 7(d) (2012). We review factual findings in the light most favorable to the ULJ's decision and will not disturb them if they are substantially supported by the evidence. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But we review issues of statutory interpretation de novo. *Halvorson v. Cnty. of Anoka*, 780 N.W.2d 385, 389 (Minn. App. 2010).

To receive unemployment benefits for a particular week, an applicant must be "available for suitable employment." Minn. Stat. § 268.085, subd. 1(4) (2012). Whether an applicant is available for suitable employment is a question of fact. *Goodman v. Minn. Dep't of Emp't Servs.*, 312 Minn. 551, 553, 255 N.W.2d 222, 223 (1977).

The ULJ found that suitable employment for Dickens includes work as a city or school bus operator, or other transportation work, and that Dickens was not available for

3

such employment during the relevant period because she restricted the hours she was willing to work. Dickens challenges both findings.

**Suitable employment**

"Suitable employment means employment in the applicant's labor market area that is reasonably related to the applicant's qualifications." Minn. Stat. § 268.035, subd. 23a(a) (2012). This includes employment on a second, third, rotating, or split shift if that arrangement of hours is customary in the occupation in the labor market area. *Id.*, subd. 23a(f) (2012).

Dickens does not dispute that she is qualified for transportation work, particularly work as a bus operator. But she contends that any position requiring her to work evening or significant weekend hours is not "suitable employment" for her because she would have "good cause" to refuse an offer of such a position under Minn. Stat. § 268.085, subd. 13c(b) (2012), or be justified in quitting such a position under Minn. Stat. § 268.095, subd. 1 (2012). We address each argument in turn.

Under Minn. Stat. § 268.085, subd. 13c, an applicant is ineligible for benefits for a period of eight weeks if she knows of a particular "suitable" position and fails to apply for it or is offered and refuses the position, unless she had "good cause" for doing so. Minn. Stat. § 268.085, subd. 13c(a). "Good cause" is "a reason that would cause a reasonable individual who wants suitable employment to fail to apply for, accept, or avoid suitable employment." *Id.*, subd. 13c(b). Both the eight-week penalty and the "good cause" exception presuppose that the position the applicant refused or failed to apply for was "suitable employment." Consequently, whether Dickens's need to care for

her son would qualify as "good cause" to decline a transportation position that required evening or weekend hours has no bearing on the determination that such positions are "suitable employment" for Dickens.

We are similarly unpersuaded by Dickens's alternative argument that any position she would be justified in quitting because of her son's need for medical care is not suitable employment. An applicant who quits employment generally is "ineligible for *all* unemployment benefits." Minn. Stat. § 268.095, subd. 1 (emphasis added). There is an exception to this rule for applicants like Dickens who quit because of a family member's medical necessity; such applicants are not categorically ineligible for unemployment benefits even though the decision to end the employment was the applicant's. *See id.*, subd. 1(7). But the exception does not eliminate the ongoing requirement that an applicant be "available for suitable employment" for every week she seeks unemployment benefits. *See* Minn. Stat. § 268.085, subd. 1(4).

Dickens contends that it is absurd to construe the unemployment insurance law to render one who is justified in quitting because of medical necessity nonetheless ineligible for benefits because that necessity makes her unavailable for the work she is qualified to perform. This argument is sympathetic but unavailing. The purpose of providing wage replacement to one who is unemployed through no fault of her own is "to assist the unemployed worker to become reemployed." Minn. Stat. § 268.03, subd. 1 (2012). The unemployment insurance law does not require an applicant to become reemployed by accepting employment beyond her skills or physical abilities and recognizes that an applicant's own medical needs may not only require her to quit but also may limit the

5

scope of employment that is suitable for her. *See* Minn. Stat. § 268.035, subd. 23a(a). But the law does not permit an applicant to forego employment that she is capable of undertaking to accommodate her family's needs. *See* Minn. Stat. § 268.095, subd. 1(7), (8) (stating that medical-necessity and loss-of-child-care exceptions "raise[] an issue of the applicant's being available for suitable employment under section 268.085, subdivision 1"). Doing so may be the right personal choice in some cases, but it does not change the nature of what employment is suitable for the applicant.

**Availability**

An applicant is available for suitable employment if she is "ready, willing, and able to accept suitable employment" and does not impose any restrictions that prevent him or her from accepting suitable employment. Minn. Stat. § 268.085, subd. 15(a) (2012). She may not pick and choose the types of suitable employment for which she will make herself available. *See Preiss v. Comm'r of Econ. Sec.*, 347 N.W.2d 74, 77 (Minn. App. 1984) (determining that no good cause existed to reject suitable employment when relator argued she refused job offer because she was waiting for a better opportunity). And she may not unilaterally limit her hours. "An applicant who has restrictions on the hours of the day or days of the week that the applicant can or will work, that are not normal for the applicant's usual occupation or other suitable employment, is not 'available for suitable employment.'" Minn. Stat. § 268.085, subd. 15(d). This means she must be available for "[e]mployment on a second, third, rotating, or split shift . . . if [such a schedule] is customary in the occupation in the labor market area." *See* Minn. Stat. § 268.035, subd. 23a(f). In short, an applicant must be ready,

6

willing, and able to accept any employment in the applicant's labor market area that is reasonably related to the applicant's qualifications.

The ULJ found that Dickens's self-imposed hour restrictions are not normal for her usual occupation as a bus operator or for other suitable transportation positions, which "have shifts outside of normal business hours" and "weekend hours." Dickens argues this finding is clearly erroneous because "many jobs in the transportation field" call for work "during daytime hours on weekdays." We disagree. Dickens's testimony amply establishes that transportation work commonly requires split, nighttime, and weekend shifts. Dickens made herself available for some transportation jobs but not others. That is insufficient to establish availability for suitable employment under Minn. Stat. § 268.085 (2012).

While Dickens's decision to prioritize being available to care for her son over being available for work is understandable, it renders her ineligible for benefits. *Cf.* Minn. Stat. § 268.069, subd. 3 (2012) (barring equitable allowance of benefits). We conclude the ULJ did not err by determining that Dickens was not available for suitable employment during her period of unemployment and therefore was ineligible to receive unemployment benefits.[1]

**Affirmed.**

---

[1] Dickens also challenges the ULJ's determination that she was not actively seeking suitable employment. Because the ULJ's determination that Dickens was not available for suitable employment independently supports the ineligibility determination, we decline to address Dickens's argument.