*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1305
A15-1308**

Autumn Ridge Landscaping, Inc.,
Relator,

vs.

Department of Employment and Economic Development,
Respondent

**Filed May 2, 2016
Affirmed
Peterson, Judge**

Department of Employment and Economic Development
File No. 33403525-2

Gregory M. Erickson, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for relator)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent)

        Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Jesson, Judge.

# UNPUBLISHED OPINION

**PETERSON**, Judge

        Relator-employer challenges the decision by an unemployment-law judge (ULJ) that respondent Minnesota Department of Employment and Economic Development

(DEED) correctly calculated relator's unemployment-insurance (UI) tax rates for 2013, 2014, and 2015. We affirm.

## FACTS

Karen Grygelko owned and operated Greenworks Landscape Contracting, Inc. (GLC), a landscaping business, and she and Tom Grygelko owned and operated Greenworks Management, Inc. (GM), a holding company. Both corporations stopped doing business in 2012 and were dissolved in bankruptcy in 2014. In 2012, Tom and Karen Grygelko's son, Joseph Grygelko, began operating relator Autumn Ridge Landscaping, Inc. (ARL), a commercial landscaping business. ARL hired six of GLC's 11 employees and one of GM's two employees in 2012.

DEED issued determinations that ARL is a successor business to GLC and GM. A ULJ determined:

> Partial succession occurred in this case. Common ownership exists between [A]RL, GLC, and GM because Joseph Grygelko is the son of Tom and Karen Grygelko. An acquisition also occurred because a portion of the workforce for GLC and GM was transferred to [A]RL. The documentation and testimony in the record show that 54.5 percent (6 of 11) of GLC's workforce was acquired by [A]RL. In addition, 50 percent (1 of 2) of GM's workforce was acquired by [A]RL. Therefore, 54.5 percent of the experience rating of GLC and 50 percent of the experience rating of GM will be transferred to [A]RL because succession occurred under Minnesota Statutes, section 268.051, subdivision 4.

*See* Minn. Stat. § 268.051, subd. 4(d), (i) (2014) (defining "common ownership" to include ownership by parent or child and "acquisition" to include obtaining a portion of the predecessor employer's workforce). ARL did not request reconsideration or otherwise

2

challenge the determination that partial succession occurred. Due to the partial succession, the ULJ directed DEED to recalculate ARL's UI tax rate.

DEED applied a two-step formula to calculate ARL's UI tax rate. First it determined ARL's experience rating as follows:

$$\frac{\text{UI benefits paid during previous four years} \times 1.25}{\text{Taxable wages paid during previous four years}} = \text{Experience Rating}$$

Then, it used the experience rating to determine the tax rate as follows:

Experience Rating + Base Tax Rate = UI Tax Rate Before Additional Assessments

ARL appealed the tax-rate determinations relating to both successorships, arguing that the formula used by DEED to calculate ARL's UI tax rates was contrary to Minn. Stat. § 268.051, subd. 4. The ULJ concluded that DEED properly calculated ARL's UI tax rates. The ULJ issued separate but identical orders for the two successorships. Both orders contain the tax rates for the ARL successorship. The ULJ affirmed the initial decisions on reconsideration.

ARL filed certiorari appeals from both orders. This court consolidated the appeals.

**D E C I S I O N**

When reviewing a ULJ's decision, we may affirm or remand the case for further proceedings; or we may reverse or modify the decision if relator's substantial rights may have been prejudiced because the conclusion, decision, findings, or inferences are affected by an error of law. Minn. Stat. § 268.105, subd. 7(d)(4) (Supp. 2015).

Statutory interpretation presents a question of law, which we review de novo. *Halvorson v. Cty. of Anoka*, 780 N.W.2d 385, 389 (Minn. App. 2010).

3

> [T]he goal of all statutory interpretation is to ascertain and effectuate the intention of the legislature. The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. In determining whether a statute is ambiguous, we will construe the statute's words and phrases according to their plain and ordinary meaning. A statute is only ambiguous if its language is subject to more than one reasonable interpretation. Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous. When we conclude that a statute is unambiguous, our role is to enforce the language of the statute and not explore the spirit or purpose of the law. Alternatively, if we conclude that the language in a statute is ambiguous, then we may consider the factors set forth by the Legislature for interpreting a statute.

*Christianson v. Henke,* 831 N.W.2d 532, 536-37 (Minn. 2013) (quotations and citations omitted).

The UI statute requires each employer to pay taxes on the taxable wages paid to each employee. Minn. Stat. § 268.051, subd. 1(a) (2014). The amount of taxes is based on the employer's assigned tax rate. *Id.* For each calendar year, the commissioner of DEED computes "the tax rate of each taxpaying employer that qualifies for an experience rating by adding the base tax rate to the employer's experience rating along with assigning any appropriate additional assessment." Minn. Stat. § 268.051, subd. 2(a) (2014). There is no dispute in this case about the base tax rate or any appropriate additional assessment; the issue is whether relator's experience rating was correctly calculated.

Each year, the commissioner is required to compute an experience rating for each taxpaying employer, and the experience rating applies to the employer for the following calendar year. Minn. Stat. § 268.051, subd. 3(a) (2014).

> The experience rating is the ratio obtained by dividing 125 percent of the total unemployment benefits required under section 268.047 to be used in computing the employer's tax rate during the 48 calendar months ending on the prior June 30, by the employer's total taxable payroll for that same period.

Minn. Stat. § 268.051, subd. 3(a). Thus, to determine ARL's experience rating, it is necessary to know the amount of unemployment benefits paid to applicants that is attributable to ARL and the amount of ARL's total taxable payroll for the relevant 48-month period. Also, because ARL is a successor employer, it is necessary to know the amount of unemployment benefits paid to applicants that is attributable to the predecessor employers, GLC and GM, and the total taxable payrolls of GLC and GM for the relevant 48-month period.

The UI statute provides:

> A portion of the experience rating history of the predecessor employer is transferred to the successor employer when:
> (1) a taxpaying employer acquires a portion, but less than all, of the organization, trade or business, or workforce of another taxpaying employer; and
> (2) there is 25 percent or more common ownership or there is substantially common management or control between the predecessor and successor.
> The successor employer acquires, as of the date of acquisition, that percentage of the predecessor employer's *experience rating history* equal to that percentage of the employment positions it has obtained, and the predecessor employer retains that percentage of the experience rating history equal to the percentage of the employment positions it has retained.

Minn. Stat. § 268.051, subd. 4(b) (emphasis added). Thus, as a successor employer that obtained 54.5 percent of GLC's employees and 50 percent of GM's employees, ARL

5

acquired 54.5 percent of GLC's experience rating history and 50 percent of GM's experience rating history.

"The 'experience rating history' . . . means the amount of unemployment benefits paid and the taxable wages that are being used and would be used in computing the current and any future experience rating." Minn. Stat. § 268.051, subd. 4(i). This means that 54.5 percent of the unemployment benefits paid and 54.5 percent of the taxable wages that would be used to compute GLC's experience rating and 50 percent of the unemployment benefits paid and 50 percent of the taxable wages that would be used to compute GM's experience rating were acquired by ARL.[1]

It is essential to recognize that "experience rating history" and "experience rating" are distinct, separately defined terms. "Experience rating history" refers to specific amounts of unemployment benefits paid and taxable wages paid. *Id.* "Experience rating" is a ratio that is obtained by applying these amounts in the mathematical formula described in Minn. Stat. § 268.051, subd. 3(a).

"The commissioner [of DEED] must notify each employer at least quarterly by mail or electronic transmission of the unemployment benefits paid each applicant that will be used in computing the future tax rate of a taxpaying employer." Minn. Stat. § 268.047, subd. 5. ARL does not dispute the amounts of unemployment benefits paid or the amounts of taxable wages paid that the commissioner used to calculate its experience rating. ARL

---

[1] The ULJ who determined that a partial succession occurred incorrectly stated in the order that "54.5 percent of the *experience rating* of GLC and 50 percent of the *experience rating* of GM will be transferred to ARL." Under Minn. Stat. § 268.051, subd. 4(b), a portion of each predecessor employer's *experience rating history* was transferred.

6

argues that, to determine its experience rating, DEED was required to multiply "the percentage of partial succession by its predecessors' experience rating history, *meaning multiplication of the percentage of partial succession by the quotient of the predecessor employers' unemployment benefits paid divided by their taxable wages* and assign the resulting experience rating to ARL." (Emphasis added.)

But nothing in the UI statute suggests that, when determining the experience rating for a successor employer, the percentage of succession should be multiplied by the quotient of the predecessor employers' unemployment benefits paid divided by their taxable wages. Under Minn. Stat. § 268.051, subd. 4(b), a successor employer acquires a percentage of a predecessor employer's *experience rating history*. Unlike an employer's *experience rating*, which is the quotient produced by dividing 125 percent of the amount of unemployment benefits paid by the total amount of taxable wages paid, an employer's *experience rating history* is the actual amounts of unemployment benefits paid and taxable wages paid that are used or would be used in computing the employer's experience rating.

Under the unambiguous language of Minn. Stat. § 268.051, subd. 4(b), ARL acquired a percentage of the actual amounts of unemployment benefits paid to applicants and the taxable wages paid by GLC and GM during the relevant 48-month period. And under the unambiguous experience-rating formula in Minn. Stat. § 268.051, subd. 3(a), the amounts acquired by ARL from GLC and GM must be added to the actual amounts of unemployment benefits paid to applicants and taxable wages paid by ARL during the relevant 48-month period to determine ARL's experience rating. This is exactly what resulted from the formula that DEED used.

7

$$\frac{\text{UI benefits paid during previous four years} \times 1.25}{\text{Taxable wages paid during previous four years}} = \text{Experience Rating}$$

To determine the amount of UI benefits paid during the previous four years, DEED added together the amount of unemployment benefits paid to applicants who were ARL's employees, 54.5 percent of the amount of unemployment benefits paid to applicants who were GLC's employees, and 50 percent of the amount of unemployment benefits paid to applicants who were GM's employees. Then, DEED multiplied this sum by 1.25 to determine the amount that was 125 percent of the total unemployment benefits paid. This amount was the numerator in the equation. To determine the amount of taxable wages paid during the previous four years, DEED added together the taxable wages paid by ARL, 54.5 percent of the taxable wages paid by GLC, and 50 percent of the taxable wages paid by GM. This sum was the denominator in the equation. DEED then divided the numerator by the denominator, and this quotient was ARL's experience rating.

The UI statute does not require DEED to multiply ARL's percentage of succession by the quotient of its predecessor employers' unemployment benefits paid divided by their taxable wages, as ARL contends. Under the unambiguous language of Minn. Stat. § 268.051, subd. 4(b) and (i), ARL's experience rating as a successor employer is based on the actual amounts of unemployment benefits and taxable wages paid by ARL and any predecessor employers during the relevant 48-month period. Because we have concluded that the relevant parts of the UI statute are not ambiguous, we will not address ARL's arguments regarding the factors set forth by the legislature for interpreting statutes.

**Affirmed**.